## TANNAGE PATENT CO. v. ADAMS et al.

### (Circuit Court, E. D. Pennsylvania.   November 16, 1896.)

**1. PATENTS — PRELIMINARY INJUNCTION — DECISION BY CIRCUIT COURT OF APPEALS.**

When a patent has been sustained by a circuit court of appeals, the only question open on a motion for a preliminary injunction in another suit is that of infringement, unless there is new evidence of such a conclusive character that, if introduced in the former case, it would probably have led to a different conclusion, the burden of establishing which is on defendant, against whom every reasonable doubt is to be resolved. Philadelphia Trust, Safe-Deposit & Insurance Co. v. Edison Electric Light Co., 13 C. C. A. 40, 65 Fed. 551, followed.

**2. SAME — PROCESSES FOR TAWING LEATHER.**

The Schultz patents, Nos. 291,784 and 291,785, for processes of tawing leather, *held* (on hearing on motion for preliminary injunction) not anticipated by the Francillon English patent of 1853, which relates to the dyeing and printing of silk, wool, and other animal fibers.

This was a suit in equity by the Tannage Patent Company against William W. Adams and others for alleged infringement of letters patent Nos. 291,784 and 291,785, issued January 8, 1884, to Augustus Schultz, for processes of "tawing hides and skins." The cause was heard on motion to dissolve a preliminary injunction.   Each patent contains a single claim, as follows:

No. 291,784: "The within-described process for tawing hides and skins, said process consisting in subjecting the hides or skins to the action of compounds of metallic salts, such as a solution of bichromate of potash, and then treating the same with a compound containing hyposulphurous acid (or, as it is otherwise called, 'thiosulphuris' acid), such as a solution of hyposulphite of soda or of potash, in the presence of hydrochloric acid."

No. 291,785: "The within-described process for tawing hides and skins, said process consisting in subjecting the hides or skins to the action of a bath prepared from a metallic salt, such as bichromate of potash, and then to the action of a bath capable of evolving sulphurous acid, such as a solution of sulphite of soda, in presence of another acid, such as hydrochloric acid, substantially as described."

Geo. R. Blodgett and Howson & Howson, for complainant.

Hector T. Fenton and Geo. L. Crawford, for defendants.

ACHESON, Circuit Judge.   The Schultz patents were sustained by the circuit court of appeals for this circuit in the case of Patent Co. v. Zahn, 28 U. S. App. 620, 17 C. C. A. 552, 70 Fed. 1003, after bona fide and protracted litigation upon the merits.   In that case the validity of the patents was most vigorously contested.   The proofs were voluminous, and the defense was conducted by experienced counsel.   The pendency of that suit was well known to the trade most interested in defeating the patents.   It is, then, a fair presumption that the defense there made against the validity of the patents was exhaustive.   Purifier Co. v. Christian, 3 Ban. & A. 42, Fed. Cas. No. 307.   Infringement by the present defendants is not denied.   Now, upon applications for preliminary injunctions to restrain infringements of patent rights, after the validity of the patent has been sustained by a circuit court of appeals, the general rule, as authoritatively laid down in this circuit, is that the only question open is that of infringement; the consideration of other defenses

being postponed until final hearing, except where there is new evidence of such a conclusive character that, if it had been introduced in the former case, it would probably have led to a different determination, the burden of establishing which is upon the defendant, against whom every reasonable doubt is to be resolved. Philadelphia Trust, Safe-Deposit & Insurance Co. v. Edison Electric Light Co., 13 C. C. A. 40, 65 Fed. 551. The new proofs relied on in support of this motion have been very carefully considered. Perhaps the most important of them all is Francillon's English patent of 1853. But this patent relates to the dyeing and printing of silk, wool, and other animal fibers, skins being mentioned as one of the subjects to which the described process may be applied. In the recent case of Patent Co. v. Donallan, 75 Fed. 287, the Francillon patent was considered by Judge Colt, who, in view of the decision in Patent Co. v. Zahn, supra, held that that patent did not throw such doubts on the validity of the Schultz patents as would justify the court in refusing a preliminary injunction to restrain infringement thereof. In this conclusion I concur. Manifestly, Francillon did not contemplate the application of his process to the tawing of skins, for he makes no reference whatever to any such result. There is not to be found in his specification an intimation that his described process has any object other than that of dyeing or coloring and printing. I am altogether unable to find on the face of Francillon's patent anything suggestive of Schultz's tawing processes. Most certainly the description in Francillon's patent is not of itself sufficient to enable any one to practice Schultz's processes. It is a significant fact that the Francillon patent had been before the public for 30 years before the date of Schultz's patents. Yet in all that time no one had discovered that the described dyeing process was applicable to the tawing of skins, or that any tawing effect had ever taken place in the use of Francillon's process. With respect to the specimens prepared for use at this hearing to show the effect of the Francillon process, the affidavits on the one side and the other are in direct conflict. These affidavits, to say the least, leave it in great doubt whether, upon any fair test of Francillon's dyeing process, it will do more than color the skins superficially, without effecting the changes necessary for the production of leather.

I do not think that I am called on, at this preliminary stage of the case, to discuss with particularity the two antecedent publications and the 12 prior patents which are now for the first time set up as a defense. It is enough to say that, considered singly or together, they do not, in my judgment, afford convincing evidence of the invalidity of the Schultz patents. Especially is this so when the new documentary proofs are read in the light of the conflicting affidavits. Every material allegation contained in the supporting affidavits is denied in the counter affidavits. Taking the proofs now presented as a whole, they are insufficient, under the rule above stated, to warrant a departure from the decision of the circuit court of appeals sustaining the Schultz patents.

No equitable reason appears for relieving the defendants from the operation of the preliminary injunction. The defendants have per-

sisted in their infringing course with full knowledge of the adjudication sustaining the Schultz patents. The patents have only a very few years to run, and preventive relief is the plaintiff's only efficient remedy. It is true that the plaintiff is not itself engaged in the manufacture of leather, but its licensees are so engaged, and they need, and are justly entitled to, protection from infringement. The plaintiff has not refused to license the defendants upon the same reasonable terms that it has accorded to other manufacturers. The motion to dissolve the preliminary injunction is denied.