### FORD MOROCCO CO. v. TANNAGE PATENT CO.

(Circuit Court of Appeals, Third Circuit.    January 18, 1898.)

#### No. 23.

PATENTS—PROCESS OF TAWING LEATHER.
    The Schultz patents, Nos. 291,784 and 291,785, for a process of tawing hides, consisting in subjecting them to the action of a bath prepared from a metallic salt, such as bichromate of potash, and then to the action of a bath evolving sulphurous acid, are infringed by one who merely modifies this process by adding some sulphate of aluminum to the bath, where the result is a chrome-tanned leather differing from that produced by strictly following the patent only in the presence of a small per cent. of aluminum, rendering it more soluble.

Appeal from the Circuit Court of the United States for the District of Delaware.

This was a suit in equity by the Tannage Patent Company against the Ford Morocco Company for an alleged infringement of certain patents for improvements in processes of tawing hides. In the circuit court an order was entered granting a preliminary injunction, from which the defendant has appealed.

Hector T. Fenton, for appellant.

Charles Howson, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and KIRKPAT-RICK, District Judges.

KIRKPATRICK, District Judge. This matter is brought before the court on an appeal from an order of the circuit court granting a preliminary injunction restraining the appellant (the defendant below) from infringing certain letters patent issued to Augustus Schultz, bearing the date January 8, 1884, and numbers 291,784 and 291,785. These patents were sustained in this court in Patent Co. v. Zahn, 17 C. C. A. 552, 70 Fed. 1003, and again declared valid in this circuit, after full hearing upon allegations of newly-discovered evidence, in Patent Co. v. Adams, 77 Fed. 191. This latter case was affirmed on appeal (26 C. C. A. 326, 81 Fed. 178); his honor, Judge Dallas (speaking for this court), declaring that the decision of the court in Patent Co. v. Zahn, supra, "should be regarded as a finality until sufficient reason for departing from it shall have been made to plainly appear, and that the appellees should not, upon a motion to dissolve a preliminary injunction, be deprived of the advantage they hold as owner of a patent adjudged by a court of appeals to be valid, upon anything less than thoroughly convincing additional proofs." None such have been offered upon this hearing. The sole question, therefore, is one of infringement. In determining the validity of the patents in question (Patent Co. v. Zahn), this court described them as being a process for tawing hides and skins by subjecting them to chemical action, with the definite object of converting them into leather." The steps of the process consisted in "subjecting the hides or skins to the action of a bath prepared from a metallic salt, such as bichromate of potash, and then to the action of a bath evolving sulphurous acid," etc., "substantially as described." It appears from the record in this case that the defendant is engaged in the tanning of hides and skins, and that for that purpose it uses a process which consists in first subjecting the hide or skin to a bath consisting of sulphate of alumina, muriatic acid, water, and bichromate of potash; the proportion of these elements being $2\frac{1}{2}$ pounds of sulphate of alumina, $2\frac{1}{2}$ pounds of muriatic acid, and 5 pounds of bichromate of potash, to each 100 pounds of hides or skins. After the hide or skin has been subjected to this first bath, it is put in a second bath, evolving sulphurous acid, which does not differ from that prescribed by the complainant's process. The question at issue, then, is whether the defendant has merely modified the complainant's process by adding some sulphate of alumina to its first bath, or whether, by its addition, it thereby actually taws the hides, and uses the bichromate of potash merely for coloring, or as a mordant. The admixture of sulphate of alumina, bichromate of potash, and muriatic acid does not form a compound; but they will each form a compound, with the skin or hide, of aluminum and chromium. Each will have its own independent results. What these results will be can be best determined

by a quantitative analysis of the product. Such an analysis has not been made upon any of the skins or hides of the defendant (it has not produced any); but upon hides or skins subjected to such tests after treatment in the first bath, such as is used in defendant's process, it is clearly shown that the addition of the sulphate of alumina to the bath does not prevent the thorough absorption by the hide or skin of the bichromate of potash; the proportion of chromic oxide to alumina taken up being as over 7 to 1. It is also found that by subjecting this skin so treated to the second bath used by the defendant, which is the same as that used by the complainant, the result is a chrome-tanned leather differing from that produced by the complainant's process only in that the presence of a small per cent. of aluminum renders it more soluble. That the result attained by the defendant's first bath at least partakes of the nature of a chrome-tawed hide, rather than that of an alum-tawed hide, is further evidenced by the fact that when an alum-tawed hide is subjected to the second bath, evolving sulphurous acid, it returns to its natural state of raw hide, instead of becoming leather, as does the chrome-tawed hide. It may be that in the first bath both the sulphate of alumina and the bichromate of potash act independently upon the hide, and that the skin first takes up, by reason of its greater affinity therefor, the alumina salt, and afterwards the chrome salt; but, if this be so, it is evident that the alumina salt is practically displaced, and the skin so saturated with bichromate of potash, that, after subjection to the second bath, evolving sulphurous acid, it becomes chrome-tawed leather. The defendant "does not use the process any the less because he uses something in addition to the process." Lalance & Grosjean Mfg. Co. v. Habermann Mfg. Co., 53 Fed. 380. Infringement is not averted by a mere addition to the patented process. Tilghman v. Proctor, 102 U. S. 730. We are of the opinion that the addition of the sulphate of alumina by the defendant to the first bath in complainant's process is immaterial, and does not affect the result attained. The order granting the preliminary injunction will be affirmed, with costs.