**ELLIOTT ADDRESSING MACH. CO. et al. v. WALLACE ADDRESSING MACH. CO., Inc.**

No. 50–156.

District Court, S. D. New York. March 12, 1930.

B. W. B. Brown, of New York City (William Nevarre Cromwell and S. Michael Pineles, both of Chicago, Ill., of counsel), for motion for injunction.

W. Saxton Seward, of New York City (C. P. Goepel and E. Clarkson Seward, both of New York City, of counsel), opposed.

WOOLSEY, District Judge.

The preliminary injunction pendente lite for which the plaintiffs pray is granted.

█ I hold that the Fuller patent, No. 1,101,268, for stencils, which has been repeatedly held valid in this circuit, is infringed in

respect of claims Nos. 1, 2, 13, 14, 15, 16, 23, and 24 by the stencils shown in the affidavits herein to have been made or caused to have been made by the defendant and sold by the defendant within this district.

The bill of complaint herein is brought by the A. B. Dick Company, a corporation of Illinois, as owner of United States patents Nos. 1,101,268, 1,101,269, and 1,101,270, and Elliott Addressing Machine Company a corporation of Massachusetts, exclusive licensee under said patents, against Wallace Addressing Machine Company, Inc., a corporation of New York, alleging infringement of said patents and praying an injunction and an accounting.

On this motion the only patent involved is No. 1,101,268, and this opinion is concerned with that patent only.

Claims 1 and 24 of the patent are typical of the other claims relied on herein and read as follows:

"1. A stencil blank capable of being stencilized, consisting of a dry but hygroscopic sheet of fibrous material impregnated with a coagulated colloidal substance, substantially as described."

"24. A stencil blank capable of being stencilized by pressure, consisting of a fibrous sheet impregnated with protein treated with a mineral coagulant and a tempering agent, substantially as described."

It is unnecessary here to quote from the specifications at any great length, however, because the point in issue here is concerned only with the chemical agent by which the coagulation above referred to is achieved.

The essence of the Fuller stencil patent, No. 1,101,268, as disclosed in the specification, is the composition of a coating which is applied to Japanese Yoshino paper and which will have certain necessary characteristics.

The base of this coating is gelatin with which is mixed in appropriate quantities— of which the proportions are not here important—glycerine and sugar to give the coating a hydroscopic characteristic, and some chemical which will coagulate or harden the gelatin. The result of a proper mixture of these ingredients is a stencil sheet which, by slight moistening, will become pliable enough to be responsive to the blows of typewriter letters, and at the same time be so tough as to make possible its preservation for long periods, and in all climates, and its use as a stencil for an almost indefinite number of impressions.

Fuller's preferred coagulating agent is potassium dichromate which, combining with the gelatin, forms an irreversible coagulation, in effect a new chemical compound. But any partial coagulation, though reversible, is an infringement of the Fuller patent if, as here, the partial coagulation has been carried to an extent sufficient to make a stencil normally dry, and exhibiting the characteristics of the stencil which Fuller first disclosed and which revolutionized the stencil industry.

This is shown by what Fuller has to say in his specifications regarding the coagulating agents which may be used to effectuate his purpose.

He says on page 2 of his specifications, at lines 99–105:

"In preparing the gelatin compound aforesaid, instead of potassium dichromate, any substance which has the power to *coagulate or harden* gelatin may be used. * * *"

Then, giving examples of chemicals which will accomplish this purpose, he continues:

" * * * Such as a preparation containing tannin or tannic acid."

"Chrome alum" he adds "may also be used with good results."

Thus he mentions certain hardening agents as examples, but does not purport to make an inclusive list.

The validity of this patent has been sustained in the following cases in this circuit, and infringements found as follows:

In A. B. Dick Company v. Underwood Typewriter Co. (D. C.) 246 F. 309, decided by Judge Hazel on October 18, 1917, and affirmed by the Circuit Court of Appeals in 252 F. 990 on May 2, 1918, formaldehyde and chrome alum used by the defendant to harden gelatin were held to be an infringement.

In A. B. Dick Company v. Barnett (D. C.) 287 F. 573, decided by Judge Mayer on September 27, 1922, and affirmed by the Circuit Court of Appeals in 288 F. 799 on March 5, 1923, Judge Hough writing, the use of potassium dichromate in a quantity not sufficient to achieve a nonreversible new chemical product, as Fuller's preferred formula does, was held to be an infringement.

On April 15, 1929, in the case of Elliott Addressing Machine Company v. Addressing Typewriter Stencil Corporation et al., Equity 47–130, Judge Coleman entered a decree on a mandate of the Circuit Court of Appeals which affirmed a preliminary injunction against infringement which he had granted,

but modified certain drastic provisions of his original injunction. 31 F.(2d) 282.

On a supplemental bill in this same case of Elliott Addressing Machine Company and A. B. Dick Company v. Addressing Typewriter Stencil Corporation et al., 39 F.(2d) 232, Judge Knox, on July 16, 1929, gave a preliminary injunction against the defendants because they were using aluminum sulphate to harden the coating of their gelatinous stencil sheets. In the course of his opinion, Judge Knox said, referring to the quotation above made from the specifications of the patent involved both here and before him:

"Similarly, it will have been observed from the portion of the patent specification quoted above that Fuller did not exclude from his disclosure such coagulants which will produce upon gelatin a reaction such as was described as capable of being brought about by the use of potassium dichromate and two or three others which he specifically named.

"In view of the worth and commercial success of the Fuller patent, neither its specifications nor its terms should be so narrowly construed as to permit the substitution of aluminum sulphate for potassium dichromate to avoid infringement."

The various consent decrees which were entered as the result of the decision of the Circuit Court of Appeals in the Barnett Case need not be here dealt with otherwise than to remark in parenthesis that the decree entered on October 11, 1929, in this district, by consent of this defendant, in A. B. Dick Company and Rapid Addressing Machine Company, Equity 31–186, expressly establishes the validity of all the claims of the Fuller patent which are here relied on, and also some additional claims not here involved.

This decree, which is still outstanding, eliminates all possible claim of laches against the plaintiffs, for it must be obvious that, with this decree as a basis, the A. B. Dick Company, one of the plaintiffs here, could have proceeded for contempt against the defendant for breach of the injunction therein contained. It is somewhat grotesque for the defendant here, with such a drastic remedy hanging over it, to claim laches against the plaintiffs when they choose to commence a plenary suit instead.

The judicial history of the patent before me, therefore, presents an unbroken line of successive cases in which infringers have uniformly failed in attempting to take refuge from the common-sense doctrine of equivalents by invoking the subtleties of chemistry.

The reason is not far to seek. The Fuller patent created in broad terms a monopoly of the method which he had invented of making a durable stencil which met all the needs of the stencil industry. Others following him tried to do more cheaply, perhaps, but not quite so thoroughly, just what he did, and to excuse themselves because they did not follow his preferred formula.

The defendant herein is using in the infringing stencils ammonia alum as its coagulating agent. It claims not to infringe the Fuller patent, because by using this agent it does not make the chemically hardened coating of its stencils into a new irreversible chemical compound as Fuller does by his preferred and usually followed formula.

Stencils, however, are not made for use in chemistry but for use in business, and one must look at the purpose of the invention as well as the wording of the patent in order to determine whether the infringing device comes within it or not.

Speaking of equivalents, Mr. Justice Sanford said in Sanitary Refrigerator Co. v. Winters et al., 280 U. S. 30 at page 41, 50 S. Ct. 9, 12, 74 L. Ed. ——:

"There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935. And see Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930. A close copy which seeks to use the substance of the invention, and, although

showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430, 23 L. Ed. 494. And even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom. Compare Duff v. Sterling Pump Co., 107 U. S. 636, 639, 2 S. Ct. 487, 27 L. Ed. 517.

The doctrine of equivalents in chemical patents was defined by Judge Lacombe with a most felicitous phrase in Treibacher Chemische Werke Gesellschaft, etc., v. Roessler & Hasslacher Chemical Co., 219 F. 210, when he said, speaking for the Court of Appeals, at page 212:

"We are satisfied that the 'equivalency' of other metals with iron is to be found, not in their chemical structure, but in their functional efficiency when combined with cerium in a metallic alloy."

It is clear here that from the point of view of "functional efficiency" the ammonia alum used by the defendant here as a coagulating agent corresponds, by its effect, in making a stencil like the plaintiffs', to the dichromate of potassium of Fuller's preferred method.

For as Judge Hough in the Court of Appeals pointed out, in regard to the partial coagulation practiced by the defendant, in the case of A. B. Dick Co. v. Barnett, 288 F. 799, when he came to sum up the situation in that case at the end of his opinion at page 802:

"We may summarily state why we consider defendant's product an infringement. As above shown by reference to the Underwood Case, Fuller's stencil sheet is something which is as to its coating 'permanentized' or tanned. We may add that it is chromatized. The relation between tanning and chromatization is interestingly shown in Tannage Co. v. Zahn (C. C.) 66 F. 986, reversed 70 F. 1003, 17 C. C. A. 552. (The case is also one of the best illustrations of sufficiency of disclosure and how to measure it.)

"The article sold by defendant is a partially chromatized, tanned, or permanentized sheet. It will do what plaintiff's sheet does and do it for the same reason; it may do it as well, but in all probability for a shorter time,

and only under more favorable conditions as to heat or moisture. All of which, however, does not prevent its being an infringement under familiar doctrine."

The coagulating agent here is ammonium alum. That is a combination in equal parts of ammonium sulphate and aluminum sulphate. It is the aluminum sulphate which causes the hardening of the gelatin in defendant's stencil, and it was the use of the aluminum sulphate which Judge Knox held infringed the plaintiff's patent in the case above cited which he decided last year.

How successfully it operates as the hardening agent of the defendant's stencil is shown by the test described by Mr. Henry H. Hawling in his affidavit of October 2, 1929, filed on behalf of the defendant, in which he says:

"I cut the sheets into about one inch squares and *soaked* these squares in 500 C. C. of water at *ordinary room temperature* for *four hours*. It was my understanding that *at this temperature very little, if any, of the gelatin would enter into the solution.*

"I then filtered the solution and evaporated it to about 25 C. C. I next added 20 C. C. of 20% solution of the purest obtainable potassium hydroxide and boiled the solution. Upon inserting in the vapor arising from the solution a moist red litmus paper, *the paper turned blue, thereby showing the presence of ammonia in the vapor.*

"This last procedure I understand to be a standard test for ammonia."

Thus it is shown by an affidavit on behalf of the defendant that, although the ammonium sulphate may be largely extracted, the aluminum sulphate is integrated with the gelatin at least to the extent necessary for making a successful stencil in imitation of the plaintiffs' type.

Such an interesting sidelight thrown by an affiant for the defendant on the practical effectiveness of the coagulation in the defendant's stencil, and the merely incidental function of the ammonium sulphate as a diluent of the true coagulating agent—aluminum sulphate—is reminiscent of Lord Bowen's celebrated dictum to the effect that the truth occasionally emerges even from an affidavit, and illustrates the aptness of the plaintiffs' characterization of the defendant's position here, as, in effect, an endeavor to avail itself of an adroit chemical camouflage.

Thus, on a new count, the defendant joins the long list of infringers of this basic patent in the stencil industry.

Counsel may attend before me, at some time to be agreed, and argue the question of the amount of the bond to be filed by the plaintiffs as a condition precedent to the issuance of the injunction pendente lite above granted.