## H. K. PORTER CO. v. BALDWIN LOCOMOTIVE WORKS et al.

(Circuit Court of Appeals, Third Circuit. November 9, 1915.)

No. 1967.

1. PATENTS ⚙⇒328—VALIDITY AND INFRINGEMENT—METHOD OF OPERATING COMPRESSED-AIR ENGINES.

The Hodges patent, No. 953,334, for a method of operating compound compressed-air engines, in which atmospheric air is used as a means for re-heating the compressed air, after its expansion in the first or high pressure cylinder, and before it passes into the second cylinder, claims 1 and 4, were not anticipated, and are valid in so far as that method is employed upon locomotives; also *held* infringed.

⚙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes .

2. PATENTS ⚷►112—VALIDITY—METHOD AND APPARATUS PATENTS.

The rejection of claims in an application for an apparatus patent, although acquiesced in by the applicant, does not invalidate a patent subsequently granted to him for the method of operation of such apparatus.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ⚷►112.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by the H. K. Porter Company against the Baldwin Locomotive Works and the Four States Coal & Coke Company. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 219 Fed. 226.

Francis T. Chambers, of Philadelphia, Pa., and James I. Kay and Robert D. Totten, both of Pittsburg, Pa., for appellant.

Wm. A. Redding and William B. Greeley, both of New York City, for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the Eastern District of Pennsylvania, dismissing a bill of complaint, which charges the defendants with infringement of Letters Patent No. 953,334, dated March 29, 1910, granted the complainant, as assignee of Charles B. Hodges, for Method of Operating Compound Compressed-Air Engines. The claims in suit are 1 and 4, which, if valid, are admitted to be infringed. The defense is invalidity. The grounds of defense are five. Lack of patentable invention and anticipation by prior patents are two. These will be considered together; the others will be disposed of in their order.

[1] The patent is for a method, and claim 1 is as follows:

"1. The method of operating compressed-air engines, consisting in carrying the air at high pressure through and expanding it in one cylinder, and thereby reducing it below lowest atmospheric temperature, re-heating the exhaust air from said cylinder when confined by extended exposure to air heating at atmospheric temperature and thereby increasing the volume thereof and its capacity to generate power, and carrying the re-heated air through a low pressure cylinder."

Claim 4 discloses the same method, but by words which we italicize, indicates another or an additional result. This claim is as follows:

"4. The method of operating compressed-air engines, consisting in carrying the air at high pressure through and expanding it in one cylinder and thereby reducing it below lowest atmospheric temperature and re-heating the exhaust air when confined by extended exposure thereof to air at atmospheric temperature and thereby increasing *it to the necessary volume to generate substantially like power within another cylinder* of greater cubical contents and carrying such re-heated air through such low pressure cylinder."

While the drawings in the patent are of compound compressed-air locomotives, and while such engines are especially the object of the

inventor, nevertheless the claims are sufficiently broad and the specification sufficiently explicit to embrace a method of operating compound compressed-air engines of any character. The charge of infringement, however, relates to and is confined to the manufacture by the Baldwin Locomotive Works and use by Four States Coal & Coke Company, of compound compressed-air locomotives of the type which appears in the drawings. The testimony in support of the charge is restricted to the manufacture and use of such locomotives. The controversy is between locomotives. Therefore, we will restrict our consideration, and, should we find the patent valid, we will limit our decision, to the subject-matter of this litigation, which extends only to the validity of the claims of the patent in so far as they relate to the method disclosed for operating compound compressed-air locomotives. In so restricting our consideration and decision, we follow the course of this court in Hagan v. Swindell, 204 Fed. 442, 122 C. C. A. 628, where a like situation developed.

The patent deals with changes in temperature and the development of power from compressed air. Hodges' invention, if such it be, was a contribution to an art in which compressed air is used as a motive power under certain conditions. Compressed air has long been used as a motive power, but it has not been extensively used in competition with steam and electricity, because of its lower efficiency. Its use, however, is superior to that of electricity or steam in places and under conditions where there is risk of fire. Therefore, compressed-air engines are chiefly used in mines.

Engines in which air and steam are used as power do not greatly differ in type. Each contains a boiler-like receptacle in which is stored the power creating medium and means for its escape into a cylinder, where, by expansion, power is developed and transmitted by pressure to a movable piston. When steam or compressed air is used in an engine with a single cylinder, it but imperfectly performs its work because it is but partially expanded, and the exhaust of the unexpanded portion carries away unused power. To meet this waste, there developed the principle of multiple expansion, that is, expansion of the whole medium in two or more cylinders, which include at least an expansion in one cylinder under high pressure and the expansion of what is left in another and a larger cylinder under low pressure.

While power from both steam and compressed air was obtained by expansion in similarly constructed machines, there was one phenomenon developed in the expansion of compressed air, which is not present in the expansion of steam. When compressed air at atmospheric temperature of 60 degrees F. leaves the tank and enters the first or the high pressure cylinder at a pressure of about 250 pounds, there occurs upon expansion a drop in temperature of about 280 degrees F., which produces the intense cold of minus 220 degrees F. At this temperature, the moisture in the air freezes, the lubricants stiffen, the machine stops, and the residuum of power remaining inert in the air is lost. It was known that by re-heating the compressed air, its power could be regenerated, and by re-expanding the regenerated compressed air in a low pressure cylinder there could be obtained from the second

expansion a power about equal to that developed by the first, resulting in a transmission of equal power to the piston in each cylinder. The problem was how to re-heat the partially expanded compressed air and thereby restore activity to its latent power.

Without reviewing the efforts to solve this problem, it is sufficient to say that it appears that until the invention of Hodges, it had not been solved in so far as it related to movable compressed-air engines or locomotives. Hodges claims to have solved the problem by making the discovery that there existed in the open air at any temperature, sufficient heat to restore the temperature of partially expanded compressed air to nearly that of its original temperature, from which another and practically equal amount of power is developed upon a second expansion, without reducing it to the prohibitively low temperature limit. In other words, he employed the common element of air as the medium by which to re-heat the chilled expanded air, and to restore its thermal efficiency. It is admitted that this was the thing accomplished, but it is vigorously denied that in it lies invention. Whether the discovery that air contains sufficient heat to restore warmth to inert compressed air, thereby restoring or rehabilitating its power, constitutes invention, depends upon a study of thermo-dynamics, which though learnedly pursued in the testimony and briefs, cannot be indulged in an opinion.

There is much confusion concerning what was known in the arts in which heat is employed as an agency or force, of precisely what Hodges' invention or discovery consists, and to what art it belongs. Therefore, it is necessary to trace, in the briefest possible way, the forces of nature, the laws of physics and the teachings of science which have been employed in the development of this and allied arts.

When Hodges and others approached the problem of obtaining power from compressed air, there were certain principles of dynamics and physics open to them all. It was known that heat is a force of nature and a source of power; that compression of air produces molecular motion which in turn produces heat; that when compressed air is expanded, heat is released and converted into power, and that by the withdrawal of heat, the air becomes cold. Science imprisoned this known force in cylinders, provided for its liberation by expansion against movable pistons, and thereby gathered from heat the power it was known to contain.

It was known to all that air, when not under pressure, contains heat, and that it contains some heat however low the temperature, and that the cheapest of all gases as a heating medium is air, because it possesses heat without cost and is free to all. It was also common knowledge that a cold body extracts heat from its warmer surrounding medium whatever that may be, and conversely, in this devolution, the warm body is made cold. This is due to the transfer of thermal units from one to the other. It was known as a scientific fact, as before stated, that compressed air becomes cold when its heat units are withdrawn by expansion, and that it loses its thermal efficiency and is no longer a source of power until heat units are restored to it in some way or other, and that when heat is restored, compressed air regains a part of its efficiency, ready to be exerted upon further expansion. Know-

ing this, science provided compound cylinders, that is, two cylinders, in the first to expand compressed air under high pressure, and then when re-heated, to expand in the second the compressed air under lowered pressure, differentiating the sizes of the cylinders to the volume of expansion intended.

These were things well known in thermo-dynamics, in physics and in science, and constituted forces and laws free to be adopted and developed by every one. The problem in the use of these forces and in the application of these principles, consisted in finding a practicable and economical medium by which compressed air after expansion in the high pressure cylinder might be re-heated so as to restore to it an equal amount of thermal energy when expanded in the low pressure cylinder. To accomplish this, many theories were evolved and media employed. Water was known to contain heat units in large number and was used to re-heat the air in interheaters between the cylinders, but not with entire success. Other sources of heat were used. Hodges found that it was practicable to utilize the heat in the surrounding atmosphere as the medium to restore to compressed air after expansion in a high pressure cylinder its lost heat to a temperature nearly equal to its original temperature, and by the restoration of this quantity of heat, to develop by a second expansion a power practically equal to that originally developed, without reducing the temperature in either cylinder so low as to cause the freezing of moisture and the stiffening of the lubricants in the machine. It is in this and in this only that the discovery of Hodges lies.

Hodges' patent is for a method defined to consist of three stages. The first is expansion of compressed air under high pressure until its temperature has fallen materially below that of the atmosphere and not low enough to cause difficulty with ice or stiffened lubrication; second, heating the compressed air expelled from the high pressure cylinder in a chamber known as an interheater or re-heater by simple exposure to the surrounding atmospheric air; third, subsequently expanding in a second cylinder the re-heated compressed air.

Expansion in one cylinder and re-expansion in a second was common in all multiple expansion engines, and was old. It is the second step, namely employing the heat in the air at atmospheric temperature as the medium by which to restore to compressed air the heat exhausted by expansion in the first cylinder, that constitutes Hodges' claim to discovery. This seems very simple, but not until we have looked into the art to which this invention directly relates can we see how novel and valuable his discovery was, and how difficult and imperfect were the attempts of others to solve the problem by other means.

The art to which Hodges' invention directly relates is a very narrow and limited one in point of development, though somewhat extended in point of duration. Compressed-air locomotives have been in existence for over thirty years, but it is conclusively shown that no compressed-air locomotive constructed prior to Hodges' invention has been a mechanical and commercial success. The early locomotives contained but one cylinder. The power derived from the compressed air was

about half of the power it contained. The next type of locomotive was equipped with compound cylinders after the manner of steam locomotives. In the locomotive of this construction, the second or low pressure cylinder developed only a power equivalent to the heat contained in compressed air after it was chilled by expansion in the first or high pressure cylinder, unless artificially heated at a cost and under conditions that permitted it. By Hodges' method, to be employed in engines of compound cylinder construction, the re-heating of the compressed air in its transit from one cylinder to the other, and the expansion of the re-heated air in the low pressure cylinder on one side of the engine, developed power equal to that exerted by the expansion in the high pressure cylinder on the other side, and transmitted to the piston on each side about equal power. This produced results not theretofore attained. First, it obtained all the power from the original heat, and second, it obtained power from the heat restored, and third, it obained an equality of power transmitted to the pistons and thereby to the wheels on each side of the locomotive, and fourth, it obtained it without fuel cost. It is not denied that these are things accomplished by the thing which Hodges says he discovered. The best proof of it is that the manufacturing defendant adopted that thing, and in its application produced an engine superior to any it had theretofore produced.

It is contended by the defendants in this regard that the use of air as a heating medium for chilled compressed air is not invention, and second, at all events, Hodges was anticipated in its use by prior patents.

Upon the point of discovery or invention, we are satisfied that if Hodges was first to employ air as a re-heating medium in this art, it constitutes invention. It was known to science and in the art that one cubic foot of water at a given temperature has 3,390 times the heating capacity of a cubic foot of air at the same temperature. Water, therefore, was early used as a re-heating medium, but water, either at normal or at artificially raised temperatures, would freeze when brought in contact with expanded air, and thereafter would be useless unless heat was restored to it. The transmission of heat by water was altogether impracticable upon compressed air locomotives used in mines, because of the risk of fire, and impracticable when used upon locomotives out of mines because of the necessity and cost of supplying heat by artificial means. When it was known that a cubic foot of water contained 3,390 more units of heat than one cubic foot of air at the same temperature, or that 3,390 cubic feet of air would supply only the same heat as one cubic foot of water, it required an imagination amounting to audacity to conceive that air at atmospheric temperature passing over pipes containing compressed air at temperature of 220 degrees below zero, would transmit to the cold air enough heat to bring it up to 60 degrees above zero or normal temperature. Yet such is the fact, and this is the fact that Hodges claims to have discovered, and after his discovery it is the fact employed by the defendant in reconstructing the theory upon which it now builds its compressed-air locomotives.

Without further discussion, we are clearly of opinion that as a re-heating medium to be used on the interheater of a compressed-air locomotive, air and water are not equivalents, and that the adaptation of air as a re-heating medium upon compressed-air locomotives was novel, immensely useful, and constitutes invention.

The next question is, whether, in view of the prior art, Hodges can be credited with this discovery and whether in a method employing it with other steps, there is patentable invention. This raises the defense of anticipation.

When this defense was reached, there arose a sharp controversy as to the art to which the alleged invention of Hodges belongs. The complainant contended that Hodges' invention is included only in that branch of thermo-dynamics which has to do with the motion of bodies and the creation of power by heat. The defendants contended that Hodges' invention is within any art which has to do with the mechanical action, uses and relation of heat, and is not restricted to an art in which heat is employed as a power.

In support of their defense of anticipation, the defendants cited ten patents, all of which, it is claimed, are within the art to which Hodges' discovery directly relates. We are rather inclined to subscribe to the contention of the complainant that the patents cited belong to four arts, in which the patents may be grouped as follows:

First: The art of cooling internal combustion engines. In this art is Worthington Patent No. 917,232. This patent provides a system of cooling a combustion engine by directing against it a current of air of a lower temperature than that of the super-heated engine. There is here no suggestion of the transmission of heat units to supply power by expansion of compressed air. Therefore, this art has no relation to the art to which Hodges' invention belongs.

Second: The art of generating power by means of vaporized liquids. To this art belongs the Geisenberger and Cherpit British Patent No. 3,056 of 1871. This patent is concerned with an elaborate system for vaporizing liquids, using the vapors to do work in cylinders and then condensing the vapors in a closed system. We see no bearing of this invention upon the invention of Hodges.

Third: The art of refrigeration, within which are the following patents: Smith, No. 596,386; Hill, No. 244,601; Dickerson, No. 655,-148; Palmer, No. 344,006.

Fourth: The art of generating power by compressed air, in which Hodges' patent directly belongs, and in which fall the following patents: Reynolds & Haupt, No. 222,950; Bushnell, No. 137,889; Nutty, No. 745,373; Rix, No. 605,187.

Compressed air was used in both the refrigerating art and in the art of generating power. The theory in which it was used in the former is diametrically opposite to the theory of its use in the latter. In refrigeration, a warm body is made cold by bringing a cold agency in contact with it and withdrawing its heat. Therefore, in refrigeration, compressed air was initially made as cold as possible. In the production of power from heat, a cold element is made warm by bringing a warm agency in contact with it and transferring to it its heat.

Therefore, the compressed air is initially made as warm as possible. In each instance there is thermal conductivity. This is a quality of heat free to be employed in different arts, but when used in different arts, by different means and for different purposes, this one force of nature does not make all arts akin.

The differences in the last two mentioned arts are clearly pointed out in the testimony of Professor Charles E. Lucke. These differences we consider fundamental, and were it not for the especial attention given to two patents in the refrigerating art, cited by counsel and considered with controlling effect by the District Court, we would not be inclined to discuss the question whether Hodges' invention was anticipated by references to the refrigerating art.

These two patents are the Smith and Hill patents before cited, granted for "Apparatus for Cooling and Refrigerating," and in principle are sufficiently alike to be considered together. The object of these patents is refrigeration, which is accomplished by utilizing the cooling effect of expanded air. The apparatus in principle is similar to the ordinary compound compressed-air engine, including a re-heater. In the system employed, the expanded and chilled air from one cylinder is utilized to chill the air of the refrigerating chamber, and this action is repeated through the other cylinder or cooler to increase the cooling action in the chamber, after which the working air is returned through the re-heater to the compressing engine for use through the same cycle. In this process there was developed and obtained a modicum of power used simply to supplement the power of the steam compressors, which is testified to be about one per cent. The District Court was impressed by the disclosures of these two patents for refrigerating apparatus, which developed an element of power, small though it was, and in his opinion the learned District Judge said:

"Moreover, in the Smith and Hill patents, there is the stated object of obtaining additional work from compressed air by raising its temperature. While the amount of power produced in the Smith and Hill apparatus would perhaps be negligible as an effective sole means of producing power, yet this is a difference of degree and not of principle."

The controlling theory of the Smith and Hill apparatus is refrigeration, produced by the cooling effect of expanded compressed air. We admit, as we must, that in performing the refrigerating function, the apparatus of the patents develop about one per cent. of power, and agree with the conclusion of the learned District Judge "that the amount of power produced in the Smith and Hill apparatus would perhaps be negligible as an effective sole means of producing power." We feel, however, that although in these patents there was present the nebula of Hodges' idea, they did not disclose to Hodges or to the art that the same means would be effective as the sole means to produce power in a compound compressed-air locomotive, and did not teach the art that in a compound compressed-air system, the surrounding atmosphere is a sufficient re-heating medium to raise the expanded and chilled working air back practically to its normal temperature, and thereby develop at least fifty per cent. of power.

It does not appear that the refrigerating apparatus of Smith and Hill were ever in use, and the Smith and Hill patents are employed merely as paper anticipations of the patent in suit. If the disclosure made by Hill in 1881 that some power could be derived from the use of an interheater such as he employed, and if the disclosure made by Smith in 1897 with respect to the negligible quantity of power developed in an interheater such as he used, were disclosures of value or disclosures at all, we believe that those who then and ever since have been working upon the problem would have used them in its solution. We are of opinion that Hodges' invention was not anticipated by the Smith and Hill patents.

There are four patents in the art to which the invention of Hodges, without question, directly belongs. The first is the invention of Nutty, which includes a re-heater, but in the performance of its function, the air is artificially heated. This distinguishes Nutty's invention from Hodges' for reasons that are too obvious to discuss.

The Bushnell patent is for compressed air motors. The inventor utilized a part of the power developed by the motor to operate an air pump, and so provided hot compressed air which he injected into the escape from the compressed-air engine to melt away the frost and ice. There is no similarity between this invention and the invention of the patent in suit.

The invention of Reynolds and Haupt relates to a pneumatic motor "for driving locomotive engines or carriages on tramways." The invention includes an interheater. The heating medium was hot water, heated of course at the cost of fuel, and to be re-heated when chilled or frozen by the transfer of its heat units to the compressed air. This invention did not anticipate Hodges.

The patent of Rix is for a pneumatic pumping engine. It is a stationary engine, and discloses the customary multiple expansion cylinders and an interheater. The re-heating medium employed by Rix is water at normal temperature. As the water is pumped it passes through the re-heater, and the heat from the flowing water is transmitted to the chilled compressed air, and raises its temperature to the proper degree for re-expansion. Water as a re-heating medium upon a stationary pump is an entirely different thing from water used for that purpose on a moving engine, thereby distinguishing this patent from Reynolds and Haupt. Water is used upon this stationary engine in the same way, and certainly with the same object and result attained by Hodges by the use of air. It is claimed by the defendants that water is an equivalent of air when employed as a medium to raise the temperature of compressed air, without regard to the difference between its use in stationary and movable engines, and therefore the use of water as a re-heating medium in the Rix interheater on a stationary engine is an anticipation of Hodges' use of air in the re-heater of a portable engine. We recognize that water is a successful medium to be employed in a re-heater on a stationary pumping engine. It does not have to be heated or transported. It is at hand and may be successfully used as long as it is present and made to flow at its normal temperature over the chilled parts.

But this contest is not between stationary engines and portable engines. It is between locomotives, and we desire neither to express an opinion nor suggest a doubt concerning the equivalency of water and air as heating media in stationary engines. But we are satisfied that water and air are not interchangeable heating media on moving engines and therefore are not equivalents. Water has to be brought to the engine in ever renewed quantities, while air brings itself in limitless supply. Water will freeze unless re-heated or replenished. Air will not freeze, and as long as it moves it brings fresh heat to the point of contact. We are therefore of opinion that the invention of the patent in suit, so far as it applies to locomotives or moving engines, is not anticipated by the Rix invention.

The third ground of the invalidity of the patent in suit urged by the defendants, is that the method set forth in the claims was in public use more than two years prior to the filing of the application for letters patent. This is not seriously urged. At all events, it is not supported by the testimony.

[2] The remaining defenses grow out of the history of the patent in suit and of another patent previously granted to Hodges.

Hodges' prior patent No. 868,560 was granted on October 15, 1907, for "Interheater for Compound Compressed-Air Engines." The prior patent was for an apparatus; the patent in suit is for a method. The prior apparatus patent contained five claims for an interheater, four of which specified means for drawing a current of atmospheric air through the interheater. These five claims were rejected by the examiner upon reference to several prior patents already considered in this case, namely Reynolds and Haupt, Nutty, Palmer, Dickerson, Geisenberger and Cherpit, all of which contained the mechanical feature of an interheater. The rejection of the canceled claims was affirmed on appeal by the Court of Appeals for the District of Columbia. The patent was eventually granted upon claims that restricted its scope to the particular mechanical construction disclosed by it. Within two years of the grant of the apparatus patent, Hodges applied for and was granted a method patent, which is the patent in suit. It is testified, and for the purpose of this discussion it may be assumed to have been proven, that claims 1 and 4 of the method patent embrace the disclosures of the rejected claims 1 to 5 of the apparatus patent, in so far as they relate to the function and operation of the apparatus of that patent. It is contended by the defendants that claims 1 and 4 of the patent in suit are invalid because they are coextensive with the rejected claims 1 to 5 of the prior apparatus patent, and because the method set forth in these claims is only the necessary method of operation of the apparatus disclosed in that patent. In other words, it is contended that the adjudication of the claims in the apparatus patent makes invalid similar claims in a method patent subsequently granted, and that after the adjudication upon the claims of the apparatus patent, the defendant was estopped to apply for and the Patent Office was without power to allow, similar claims in a method patent.

227 F.—15

It is further urged by the defendants that the grant of the method patent, which is the patent in suit, was made by the Patent Office without knowledge of the proceedings and adjudication respecting the prior apparatus patent. This, we think, is successfully controverted.

As stated by the District Judge, it is a well established principle that a patent for "an apparatus in which a new method is employed does not preclude the patentee from later obtaining a method patent for the process." This principle has been distinctly announced by the Supreme Court in Steinmetz v. Allen, 192 U. S. 543, 561, 24 Sup. Ct. 416, 422 (48 L. Ed. 555), in which the court said:

"If the classification of the statute makes a distinction between the different kinds of inventions—between a process and an apparatus—and requires or permits a separate application for each, it would seem to follow irresistably that an application and patent for one would not preclude an application and patent for the other, and the order of the application would not affect the right which the law confers."

In the case of Leeds & Catlin v. Victor Talking Machine Company, 213 U. S. 301, 318, 29 Sup. Ct. 495, 500 (53 L. Ed. 805), the Supreme Court expressed itself:

"A process and an apparatus by which it is performed are distinct things. They may be found in one patent; they may be made the subject of different patents. So may other dependent and related inventions. If patented separately, a foreign patent for either would not affect the other."

While the District Court recognized this to be the law, it nevertheless felt bound by the adjudication of the Court of Appeals for the District of Columbia in affirming the rejection and cancellation of what may be termed the method claims in the Hodges' apparatus patent. But that adjudication related to claims for an apparatus patent. Whatever might be gathered by reflection from the opinion of that court as to what it would do with similar claims in a method patent, its decision did not extend to a method patent. The method patent was granted, it is testified and we must assume, with full knowledge on the part of the Patent Office of the litigation and decisions concerning the apparatus patent. As an inventor is entitled to apply for both a machine patent and a method patent, the Patent Office has power to grant both, if in both there is disclosed patentable invention.

The first appearance in court of the Hodges' method patent was in the District Court seeking construction of its own terms. We think its terms should have been construed without regard to the consideration given to similar terms contained in an application for another patent for a different thing, and are therefore of opinion that claims 1 and 4 of the patent in suit are not controlled or made invalid by the procedure and decisions respecting claims 1 to 5 in the prior patent of the same inventor.

We hold that claims 1 and 4 of Hodges' patent No. 953,334, for method of operating compound compressed-air engines, are valid in so far as that method is employed upon locomotives, and that the same are infringed by the locomotive of the defendants.

The decree below is reversed.