## CRUCIBLE STEEL CO. OF AMERICA v. HELLER BROS. CO.

(District Court, D. New Jersey. June 30, 1923.)

1. Patents ⊚⇒328—993,631, for method of removing core from hollow steel drill rods, held valid and infringed.

   The Young & Rowlands patent, No. 993,631, for a method of removing the refractory core from hollow steel drill rods, by means of a jet of gaseous fluid under pressure, ordinarily compressed air, held not anticipated, valid, and infringed.

2. Patents ⊚⇒229—Infringement not avoided by using something in addition to patented process.

   Infringement of a process patent is not avoided by using something in addition to the patented process, though, if new and useful, it may be patentable.

3. Patents ⊚⇒109—Amendment of application within original specification does not require new oath.

   Where an amendment of an application is within the original specification, and is a limitation and narrowing of the original claim, a new oath is not required.

4. Patents ⊚⇒86—Abandonment of application for machine patent does not preclude granting of patent for process.

   A process and a machine for practicing the process may either or both be patentable, either in the same or by separate patents, and abandonment of an application for the machine patent does not preclude the subsequent granting of a patent for the process, which may be infringed by the use of different machines.

In Equity. Suit by the Crucible Steel Company of America against the Heller Bros. Company. Decree for complainant.

Marshall A. Christy and Bayard H. Christy, both of Pittsburgh, Pa., for plaintiff.

Warren B. Hutchinson, of New York City, for defendant.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BODINE, District Judge.   [1] The patent in suit is United States letters patent No. 993,631, issued May 30, 1911, to Messrs. Arthur Young and Thomas Rowlands, of Sheffield, England.   The patent describes the invention in the following language:

"This invention relates to the manufacture of hollow metal rods, bars, and the like, and particularly to those rods or bars known generally as 'hollow drill steel.'  In the manufacture of hollow steel bars or rods the following method has been proposed: A steel bar, billet, or ingot is formed with a central hole, which is filled with appropriate refractory material such as siloxicon, silica, alumina, or other suitable substance, to serve as a core and the ends are plugged.  *  *  *  The bar, billet, or ingot, together with its core, is then heated and submitted to repeated rolling operations until a rod or bar of the required dimensions is obtained, after which the core is removed.  This removal of the core has hitherto been effected by a drilling operation.  This operation gives rise to considerable trouble, particularly when the diameter of the core is small and consequently difficult to remove by drilling, and partly because the core in the course of the rolling operation generally assumes a more or less oval or irregular cross-section, so that parts of it remain in the hole after the drilling.  Furthermore, the drilling entails a considerable amount of time, and consequently adds to the expense of the manufacture.  Moreover, the material of the core is hard, and quickly dulls and wears a drill.

"The chief object of our invention is to overcome the above-stated difficulties.  According to our invention the removal of the core after the rolling operation is effected by means of a fluid which, in the form of a fine jet at a high pressure, is caused to progressively follow and impinge upon the core, whereby the latter is continuously worn down or disintegrated and blown out or discharged from the hollow bar.  In this manner the hole in the bar, even if it has become of oval or irregular section in the course of the rolling operations, will be cleared of the core."

The claims are as follows:

"1. The method of removing a refractory core from a hollow rod or bar which consists in discharging a jet of a gaseous fluid under pressure directly against the end of said core, and progressing said jet through said rod or bar as rapidly as said core is disintegrated by the action of said jet.

"2. The method of removing a refractory core from a hollow rod or bar which consists in discharging a jet of a gaseous fluid under pressure directly against the end of said core, progressing said jet through said rod or bar as rapidly as said core is disintegrated by the action of said jet, and conveying away the particles of said core as they are delivered from said bar by the action of said jet."

Hollow steel drills play an important part in quarrying stone and in drilling holes for blasting in road building and construction work of all kinds.  Prior to the invention, hollow steel drills were made with great difficulty and expense, because of the necessity of drilling out the metal or sand core.  The plaintiff's patent introduced a new method into the art—an inexpensive and effective method.

After the steel billet, with the core filled with sand packing, has been rolled to the proper diameter, the bar is placed against a machine embodying the method disclosed in the patent.  The machine has a tube connecting with a compressed air tank.  The tube is placed against the bar containing the sand core.  As the sand is broken down by the air blast, it is carried off into a reservoir by suction, while the tube is advanced by pressure.  The plaintiff's invention has enabled the production of long bars of hollow drill steel at a minimum of expense. Bars 18 feet long are cleaned out in about 30 seconds.

[2] The defendant uses a less degree of air pressure and rotates the tube carrying the air into the bar containing the sand core. Its operation is slower, but its requirements for air pressure are less. As was said by the Circuit Court of Appeals for this circuit in the case of Ford Morocco Co. v. Tannage Patent Co., 84 Fed. 644, 646, 28 C. C. A. 503, 504:

"The defendant 'does not use the process any less because he uses something in addition to the process.'"

If what the defendant does is a new and useful improvement, it might secure a patent. Tilghman v. Proctor, 102 U. S. 707, 731, 26 L. Ed. 279.

[3] The principal defense is that the claims of the patent in suit are invalid for the reason that the patentees never, at any time, made the oath required by the statute. The Patent Office file wrapper shows the original application was for a machine. Finally the apparatus claims were canceled and the two present method claims were substituted. In the original application, the first claim was as follows:

"In the manufacture of hollow drill steel, means for removing the filling of core by high pressure fluid adapted to impinge upon the said core."

Obviously this claim is as much a description of what was claimed in the invention as the claims allowed. It covered, not only "a gaseous fluid under pressure," but high pressure fluid of any kind.

The case of Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139, is cited by the defendant. An examination of the opinion in that case is a refutation of the suggestion that it is here applicable. The claim allowed in that case was not predicated upon the theory upon which the inventor was working. The court said (215 U. S. at page 166, 30 Sup. Ct. 49, 54 L. Ed. 139):

"He * * * testified that it [the claim] was his lawyer's contrivance. * * * But the uncertainty indicated even by the language of the patent is important in determining whether it describes a new invention in terms sufficiently precise to be upheld."

The court, further commenting upon the claims stated (215 U. S. 168, 30 Sup. Ct. 50, 54 L. Ed. 139):

"Vacillation in theory led to uncertainty of phrase. * * * He made no claim for a process and disclosed no invention of a device. This being so, the amendment required an oath that [patentee] might have found it difficult to take, and for want of it the patent is void."

An amendment within the scope of the original specification and a limitation and narrowing of the original claim may be made after the death of the inventor, so long as the invention is the identical invention sworn to. De La Vergne Machine Co. v. Featherstone, 147 U. S. 209, 229, 13 Sup. Ct. 283, 37 L. Ed. 138.

The case of George Cutter Co. v. Metropolitan Mfg. Co. (C. C. A.) 275 Fed. 158, and Del Turco v. Traitel Marble Co., unreported, need no discussion. The decisions do not go to the extent claimed for them by the defendant, and do not and cannot in any way alter the rule of law above stated. The applicant for the patent, in his original application having sworn to a broader claim than that finally allowed,

was properly not required by the Patent Office to make an additional oath.

[4] The defendant contends, also, that the patentees abandoned to the public claims to apparatus such as is now used by the defendant. This assertion is predicated on the following statement in the specifications:

"In some cases the removal of the core by the fluid can be facilitated by mechanical means, such as, for instance, chiseling, drilling, boring, and the like."

And on original claim 3, as follows:

"In the manufacture of hollow drill steel, the combination, with the means for removing the filling by a jet of high pressure fluid directed against the core or filling, of mechanical means adapted to facilitate the said removal."

An examination of the file wrapper shows that the statements in the specifications and the claim were eliminated, not because there had been an anticipation, but because the mechanical device referred to was not shown in the drawings. Finally, when the patent was allowed, it was not allowed upon the mechanical device, but upon the method; hence the cancellation of claim 3 and the corresponding statement in the specifications has no effect. See H. K. Proctor v. Baldwin Locomotive Works, 227 Fed. 216, 225, 226, 141 C. C. A. 642, 651, where Judge Woolley, speaking for the court, said:

"In other words, it is contended that the adjudication of the claims in the apparatus patent makes invalid similar claims in a method patent subsequently granted, and that after the adjudication upon the claims of the apparatus patent, the defendant was estopped to apply for and the Patent Office was without power to allow, similar claims in a method patent. It is further urged by the defendants that the grant of the method patent, which is the patent in suit, was made by the Patent Office without knowledge of the proceedings and adjudication respecting the prior apparatus patent. This, we think, is successfully controverted. As stated by the District Judge, it is a well established principle that a patent for 'an apparatus in which a new method is employed does not preclude the patentee from later obtaining a method patent for the process.' This principle has been distinctly announced by the Supreme Court in Steinmetz v. Allen, 192 U. S. 543, 561, 24 Sup. Ct. 416, 422 (48 L. Ed. 555), in which the court said: 'If the classification of the statute makes a distinction between the different kinds of inventions—between a process and an apparatus—and requires or permits a separate application for each, it would seem to follow irresistibly that an application and patent for one could not preclude an application and patent for the other, and the order of the application would not affect the right which the law confers.'"

See, also, Westinghouse Electric & Mfg. Co. v. Condit, 194 Fed. 427, 430, 114 C. C. A. 389.

The process covered by plaintiff's patent was new and useful and was the result of the exercise of inventive skill. The patentee's method was a substantial improvement, irrespective of the machine. As was said in Expanded Metal Co. v. Bradford, 214 U. S. 366, 383, 385, 29 Sup. Ct. 652, 656 (53 L. Ed. 1034):

"It is undoubtedly true, and all the cases agree, that the mere function or effect of the operation of a machine cannot be the subject-matter of a lawful patent. But it does not follow that a method of doing a thing, so clearly indicated that those skilled in the art can avail themselves of mechanism to carry it into operation, is not the subject-matter of a valid patent. The con-

trary has been declared in decisions of this court. A leading case is Cochrane v. Deener, 94 U. S. 780, in which this court sustained a process patent involving mechanical operations, and in which the subject was discussed by Mr. Justice Bradley, speaking for the court. On page 787 that learned justice said: 'That a process may be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. * * * Either may be pointed out; but if the patent is not confined to that particular tool or machine, the use of the others would be an infringement, the general process being the same. A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence.' * * * In Leeds & Catlin v. Victor Talking Machine Company (decided at this term) 213 U. S. 301, 318, this court said: 'A process and an apparatus by which it is performed are distinct things. They may be found in one patent; they may be made the subject of different patents.' We therefore reach the conclusion that an invention or discovery of a process or method involving mechanical operations, and producing a new and useful result, may be within the protection of the federal statute, and entitle the inventor to a patent for his discovery."

The nearest alleged disclosure of the prior art is the Wagner patent, No. 342,274. This patent was for a method for sinking an empty pipe into the ground with a steam jet to disintegrate the material in advance of the pipe, which progresses into the hole. The next nearest disclosure is the Rucker patent, No. 894,538, a method for cleaning flues by steam jet. Certainly neither of these patents are anticipations of the plaintiff's patent.

Before the discovery of the plaintiff's method, it was old to fill the hollow billets with sand, United States patent No. 12,000, of 1854. The trouble was to get the sand out. The Wheeler patent, No. 117,-494, of 1871, calls for a self-delivery core of soapstone. This was ineffective. It remained for the plaintiff's patentees to discover a new method for removing the sand by the use of compressed air, and this they discovered and disclosed in their patent.

The defendant infringes. An injunction will issue.