GEAR et al. v. FAIRMOUNT ELECTRIC & MFG. CO. et al.

(District Court, E. D. Pennsylvania.    July 1, 1915.)

No. 759 Oct. Sess. 1911.

PATENTS ☞109, 328—VALIDITY AND INFRINGEMENT—CONNECTOR FOR ELECTRI-
CAL CONDUCTORS.

The Williams patent, No. 831,815, for a connector for electrical conduc-
tors comprising a pair of separable members composed of insulating ma-
terial which receive and confine the ends of the conductors, makes her-
metically sealing the confined ends of the conductors and the connecting
means by the insulating material an essential element of each claim, and
inasmuch as such feature is not mentioned in the original specification,
but was added to the claims by amendment without oath of invention,
the claims are not within the application and are void. Also, *held* void as
for unpatentable aggregations and for anticipation and not infringed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 152; Dec. Dig.
☞109.]

In Equity.  Suit by Henry B. Gear and Paul F. Williams, doing
business as Gear & Williams and as the G. & W. Electric Specialty
Company, against the Fairmount Electric & Manufacturing Company,
and J. C. Vogel, president, G. W. Slack, secretary, and C. S. Leonard,
treasurer, of said company, for infringement of letters patent No. 831,-
815, for a connector for electrical conductors, granted to Paul F. Wil-
liams September 25, 1906.  On final hearing.  Decree for defendants.

A. Miller Belfield, of Chicago, Ill., and Augustus B. Stoughton, of
Philadelphia, Pa., for plaintiffs.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia,
Pa., for defendants.

THOMPSON, District Judge.  The plaintiffs' patent is for a con-
nector for electrical conductors and, as stated in the specification, the
invention relates to devices by which connection can be made with
the ends of electrical conductors; as, for instance, between two cables
or between a cable and an overhead conductor.

The defenses presented are:  (1) That the claims of the patent in suit
are invalid because:  (a) They are for new matter not contained in the
original application and inserted by amendment without the oath re-
quired by Revised Statutes, § 4892 (Comp. St. 1913, § 9436);  (b) they
are for unpatentable aggregations;  and (c) they are void in view of
the prior art.  And (2) assuming that the patent is valid, the defend-
ants have not infringed.

The first claim of the patent is fairly illustrative of all the claims,
and is as follows:

"1. A device of the class specified, comprising a pair of separable members
composed of insulating material, said members receiving and confining the
ends of the conductors to be connected, means for connecting said conductors,
and insulating material hermetically sealing the confined ends of the conduc-
tors and the connecting means therefor within said separable members."

It will be noted that the claim concludes with the element "and in-
sulating material hermetically sealing the confined ends of the con-
ductors and the connecting means therefor within said separable mem-
bers."

A similar limitation is set forth in each of the remaining four claims
of the patent.  An examination of the file wrapper reveals that the

original application contained ten claims, none of which set forth the limitation in respect of hermetically sealing. The ten claims were rejected in view of prior patents and five new claims were substituted containing no limitation of hermetically sealing. The five claims were all rejected in view of the prior art. The applicant then filed a third set of six claims, the second to the sixth of which now stand as the claims of the patent in suit, the first claim not containing the clause providing for hermetically sealing. These claims were rejected by the primary examiner as being anticipated by the prior art.

Reconsideration of the claims was thereupon requested, in which request the applicant's attorney stated:

"As pointed out at this interview, none of the references show applicant's arrangement of an insulating casing with the two plates held together upon one another, and connecting devices hermetically sealed in the casing by insulating material. Allowance is requested."

The patent with the claims as they now stand was thereupon allowed. While the original specification referred to filling the separable members "with minerallac or other suitable insulating material," the words "hermetically sealing the confined ends of the conductors and the connecting means therefor within said separable members" state a new element in each claim which is nowhere set out in the original application. "Hermetically," in its broad signification, means "chemically," and, according to Century Dictionary, a "hermetical seal" is "an alchemic or chemical seal; an air-tight closure of a vessel effected by fusion, soldering, or welding." And "hermetically" sealed means "so closely sealed as to prevent the escape or entrance of air, gas or spirits."

As used in the amended claims, it is apparently a vital part of the claims, as all the claims were rejected by the Patent Office prior to the insertion of the limitation of hermetically sealing. This limitation was considered by the Patent Office as necessary to furnish an element of the combination upon which the claim to invention depended, and, whatever its significance, its addition by amendment invalidates the patent if it is new matter essential to the claims not contained in the original specification. It is possible that by "hermetically sealing" the applicant intended to narrow the claims to cover the exclusion of water and moisture as now contended; but, if this is true, it is nowhere indicated in the specification, as minerallac is referred to in connection with other suitable insulating material, and no reference is made to its being a substance impervious to moisture, nor is there any proof of such quality. That such a limitation was not in the mind of the applicant is apparent where in the specification he states:

"In figure 5 I have shown the device modified in two respects. One of these is that the hood 2a is provided with an overhang 20, by which rainwater is led down and caused to drip, thereby preventing it from gaining access to the interior of the device."

If it was intended that the insulating material should hermetically seal the confined ends of the conductors and the connecting means therefor within the separable members, there would be no apparent necessity to provide an overhang to lead down the rainwater. At all events, no suggestion of hermetically sealing, even as the plaintiffs con-

tend the term should be construed, is contained in the specification or claims as originally filed. That it is regarded as essential by the plaintiffs appears from their brief and was insisted upon at the argument. It must be held therefore that this is an essential new limitation beyond the terms of the original disclosure, and, being added to each claim by amendment without oath of invention, the claims are void under the authority of Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139, and the cases therein cited. Moreover, the claims are clearly anticipated by the prior art.

An examination of the drawings and specification in connection with the claims shows that the invention claimed simply comprises a pair of separable members composed of insulating material which receive and confine the ends of the conductors, which are connected by a slip joint, plus insulating material for hermetically sealing the confined ends of the conductors and the connecting means therefor.

The Cobb patent, No. 396,543, when read in connection with its drawings and specification, contains every essential element of the patent in suit, as shown by the drawings below:

WILLIAMS, 831,815.
PAT. IN SUIT

COBB #396,543.

Fig. 3.

Fig. 2.

**Williams Claim 1:** A device of the class, specified, comprising a pair of separable members, composed of insulating material, said members receiving and confining the ends of the conductors to be connected, means for connecting said conductors, and insulating material hermetically sealing the confined ends of the conductors and the connecting means therefor within said separable members.

Like the patent in suit, it comprises a pair of separable members composed of insulating material, namely, an outside casing of vulcanized or hard rubber; the separable members receiving and confining

the ends of the conductors to be connected. In the Cobb patent the means for connecting the conductors consist of a sleeve or a thimble fitting with the outside casing of one member and over the insulation of the conductor of the other member, and the members contain as an insulating or sealing material a filling of paraffine. The elements comprising the members of the patent in suit are manifestly equivalents of those in the Cobb patent requiring merely mechanical skill for their substitution. From the accompanying comparative drawings of the patent in suit and Figure 4 of the Eckert patent, it may readily be seen that the separable members and every material part of the connecting device, as well as the overhanging cap in the patent in suit, is present in the Eckert patent, which is also supplied with "hermetical" sealing consisting of a filling of rubber. In the Eckert patent, the slip joint employed in the patent in suit has its equivalent, in that one of the members is provided with a screw which is inserted within a screw provided in the other member, whereby parts of the conductor may be removed by unscrewing one section from another.

WILLIAMS PATENT IN SUIT, No. 831.815. OF SEPT. 25TH. 1906.

ECKERT AND GREGORY PATENT, No. 442.575. OF DEC. 9TH 1890.

Fig. 2.

Fig. 4.

It manifestly did not require invention to substitute for two of the joints used in the Cobb patent the short overlapping members in the patent in suit, nor to substitute for the casings for indoor wiring disclosed by the Eckert patent shorter couplings. It is only necessary finally to refer to the Tailleur patent, No. 593,442, in which the specification states the object of the invention to be a simple and effective means whereby the terminals of electric cables or wires, particularly such as are designed for carrying currents of high tension, may be joined together in such manner that the access of moisture to the cable-terminals will be securely guarded against.

The Tailleur patent also shows that the separable joints upon which the plaintiffs place reliance are not new.

It is obvious that mere mechanical skill is all that was required to adapt the disclosures of the Cobb, the Eckert, and the Tailleur patents in order to produce the plaintiffs' device. No new element is shown, and no new purpose is accomplished; nor is there any new coaction in the combination of the old elements.

It is held therefore that the claims are invalid because they contain new matter inserted by amendment without compliance with the requirements of Rev. St. § 4892 (Comp. St. 1913, § 9436), because they are for unpatentable aggregations, and because they are anticipated by the prior art, and the defendants have not infringed.

The bill is dismissed.