## ASPHALT REVETMENT CO., Inc., v. UNITED STATES.

### No. 43300.

Court of Claims.

Feb. 1, 1943.

H. L. Godfrey, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (J. F. Mothershead, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHALEY, Chief Justice.

The plaintiff in this case seeks to recover for the alleged infringement of a patent granted on application of Oscar A. Mechlin for improvements in "protection of river banks," the plaintiff corporation having acquired title to this patent by an assignment executed January 19, 1931. The patent is directed to a reinforced protective mat of asphaltic composition having permanently flexible characteristics. The terminology of the two claims of the patent in suit is applicable to asphaltic composition mattresses manufactured and installed by the defendant on the banks of the Mississippi River, and the patent, if valid, is infringed by this structure. The issue thus presented to us is one of validity.

The defendant contends that the patent in suit is invalid for lack of sufficient disclosure and also that the patent fails to disclose any feature of novelty in view of the teachings of the prior art.

The essential facts established by the record are set forth in the findings. Plaintiff took exception to many of the Commissioner's findings and has proposed certain changes in them. The defendant urges that the Commissioner's findings be adopted and the amendments suggested by plaintiff be denied.

Upon consideration of plaintiff's exceptions to the findings, in the light of the entire record in this case and the specifications and claims of the patent in suit, we are of the opinion that they are not sustained by the record. Other than our consideration of prior art and knowledge which follows, and which we think answers plaintiff's exceptions on this phase of the case, no useful purpose would be served by a detailed discussion of plaintiff's numerous exceptions.

It has long been common knowledge that the bank of a river or stream or a canal, which may be properly termed an artificial stream, is subjected to the erosive effects of the flowing water. This is particularly true where the bank is on a bend of a

George R. Shields and Gilbert P. Ritter, both of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

river or stream and thus receives a direct impingement of the water.

For many years defendant's engineers have been actively engaged in revetment work in order to protect the banks of the Mississippi River and to stabilize it in its course. Various types of mats or mattresses have been used for this purpose, the most prominent of which are the fascine mattress and the articulated concrete mattress.

The fascine mattress comprises bundles of willow brush woven together by wire or cable, floated into position and sunk to its final location by loading it with rock. The articulated concrete mattress comprises a plurality of closely spaced, reinforced concrete blocks, the reinforcing parts of the mattress extending from one block to the next and thus making an articulated joint. Both of these types of bank-protective mats possess the inherent flexibility necessary for the mattress to conform to the unevenness of the bank and if a portion of the bank is eroded underneath the mats they will, because of their flexibility, tend to conform to the new contour.

The patent in suit has two claims, both of which are in issue. In our discussion it is only necessary to consider claim 1, which is as follows:

"1. A protective mat for river banks consisting of a metallic reinforcement embedded in a mass of inert filler material so permeated with a waterproof plastic binder of such coherence and viscosity as to form a permanently flexible homogeneous water-resistant self-sustaining uncovered sheet, the surface of which directly contacts with the river site and the mass of which conforms of itself to the contour thereof."

The phraseology of the second claim is identical to this with the exception that it defines the binder as an *"oil asphalt binder"* instead of a *"waterproof plastic binder."*

It is manifest from the patent specifications that the inventor was attempting to create a form of metal reinforced mat structure of asphaltic composition having the same characteristic or flexibility and ability of conformation as exemplified by the willow mat structure and the articulated concrete structure, making use of the flexibility which is a known characteristic of asphaltic and mastic compounds.

The articulated concrete mat and the method of laying it were disclosed to those skilled in the art many years before the filing of the Mechlin application which matured into the patent in suit, in a United States patent to Shearer 1,229,152 issued June 5, 1917. Shearer v. United States, 87 Ct.Cl. 40. From the arguments presented in plaintiff's brief it might indeed be readily assumed that the issue of validity now before us is mainly dependent upon whether the reinforced asphaltic composition mat was a sufficient advance step in the art as compared with the reinforced articulated concrete mat to come within the realms of invention. Our consideration of the prior art, however, which follows indicates that this is a question that we do not have to answer, for reinforced asphaltic composition mats for river bank protection form a part of the prior art, and the use of reinforced asphaltic composition for this purpose was not a novel mental concept of the patentee Mechlin.

The Mechlin application as filed on August 8, 1929, contained ten claims, these claims being addressed respectively to a method of protecting river banks; a method of forming flexible protective mats for this purpose, and to the structural elements of the mat itself (see Finding 8 and defendant's Exhibit 3). Upon rejection of the Mechlin method claims by the Patent Office these claims were canceled and the patent as issued contained the two claims in suit, which are directed to structure only and must be considered irrespective of any particular method of formulating or laying such structure. Incidentally, the abandonment of the method claims took place after citation of the Shearer patent by the Patent Office examiner.

As has already been indicated, one of the grounds urged by the defendant as to why the patent should be considered invalid is that of alleged failure of the specification to give a sufficient disclosure for the purpose of enabling one skilled in the art to practice the invention.

Section 4888 of the Revised Statutes, 35 U.S.C.A. § 33, provides that the inventor of an invention " * * * shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains,

or with which it is most nearly connected, to make, construct, compound, and use the same; * * *."

The specification of the patent in suit gives the following instructions to those skilled in the art with reference to the composition and structure of the same:

"There is provided a metallic reinforcement consisting preferably of a foraminous metal sheet, such as expanded metal or wire screening, of the desired width and length. The metallic reinforcement is embedded in a flexible self-sustaining mat, composed of inert granular material and a binder which is caused to permeate the mass of inert material so as to provide a coherent mass which substantially encloses the metallic reinforcement. It is preferable for the inert body of the mat to use sand and gravel, or broken stone and stone dust, and for the cohesive binder, a suitable bituminous mastic material such as oil asphalt. *The binder and the inert body are mixed in proper portions* to provide a flexible, plastic mass which when enclosed around the inside metallic reinforcement, forms a self-sustaining sheet or mat that may be directly applied to the river bank or other site to be protected." [Italics ours.]

More specifically, defendant's position is that the above quotation from the patent specifications is merely an invitation to experiment until the proper proportions of asphaltic binder, sand, and gravel, or broken stone and stone dust, are obtained, and that a failure to give more definite information as to the proper proportions of the various materials to be used is a noncompliance with the above-quoted portion of the patent statutes. To this we do not agree. The state of the prior art as shown by the record in this case would indicate that those skilled in this particular art possess ample knowledge of the proper proportions of such a mixture.

The Standard Oil Bulletin of May 1924 (Finding 18) made public five years before the application date of the patent in suit, enters into a complete discussion of asphaltic canal lining and on page 12 describes a canal lining of a thickness of 1½", speaks of its inherent flexibility, and states that the flexible asphaltic material conforms without cracking to any depressions or settlings which may occur after the construction of the lining. The article specifies that the asphalt mix to be used is as follows:

"D" Grade Calol Asphalt...... 13%–15%
Mineral filler, such as rockdust.. 10%–15%
Sand ........................ 70%–77%

As a matter of fact, this publication which we merely refer to as showing the prior state of the art and knowledge of the flexible qualities of asphalt, appears to disclose everything called for by the claims of the patent in suit with the exception of the metallic reinforcing, which, from the record, is old and well known to those skilled both in the concrete and asphaltic composition art.

It may well be that in different localities stone, crushed stone, and stone dust may have different characteristics, and, just as in the case of cement mixtures, require some alteration in the percentages of these inert materials combined with the asphalt, but we do not think such adjustment to local conditions is outside the mental scope of the ordinary man skilled in the art, or requires such a degree of experimentation as brings this case within the principle announced by the Supreme Court in Steward v. American Lava Co., 215 U.S. 161, 30 S.Ct. 46, 54 L.Ed. 139.

In our consideration of the Mechlin patent the next question which presents itself is with respect to the size and dimensions of the asphaltic composition mats specified by the claims in suit. The mats installed by the Government in the Mississippi River and upon which the present charge of infringement is based, were about 1½ to 2 inches thick, varied from approximately 160 to 217 feet in width, and were of various lengths. Plaintiff, of course, urges that mats of this size come within the terminology of the claims. The defendant raises no issue as to this and we have so found.

Would a mat, however, of asphaltic composition, with its inherent quality of flexibility, reinforced by a metal reinforcement, and from 2 to 6 inches in thickness, 1 to 3 feet in width, and from 2 to 10 feet in length also come within the terminology of the claims? Plaintiff is placed in the rather peculiar position of urging that it does not because mats of reinforced asphaltic composition of the dimensions which we have just stated are disclosed in the prior art United States patent to McGillivray (see Finding 19). A careful ex-

amination of the specification of the Mechlin patent discloses no limitation as to length, width or thickness, and in fact this is apparently left entirely to those skilled in the art, for the specification of the patent in suit states—

"If desired, instead of forming the mats as a continuous sheet, they may be made of individual sheets of the *required dimensions*." [Italics supplied.]

Plaintiff attempts to argue that this statement in the specification deals only with the act of making or "forming" small sheets which are subsequently joined into a large continuous sheet. We feel certain, however, that the Mechlin patent clearly was intended to include in its scope mats of any suitable dimensions, be they large or small.

Plaintiff's theory that the patent monopoly is addressed to large continuous sheets only and not to mats of the size set forth in the prior art patent to McGillivray, if followed, would lead to invalidation of the claims because of indefiniteness. See General Electric Co. v. Wabash Appliance Corporation, et al., 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402, which states:

"Patents, whether basic or for improvements, must comply accurately and precisely with the statutory requirement as to claims of invention or discovery. The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public. The statute seeks to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights. *The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.'*" [Italics supplied]

It is only necessary to refer to one other prior art patent, the United States patent to Hawkes. The disclosures and teachings of this patent are covered in Finding 20, but what is shown and described in this prior patent is so remarkably similar to what the Mechlin patent in suit attempts to establish as a patent monopoly that we feel, even at the expense of some repeti-

tion, we should again refer to it in some detail.

The Hawkes patent is directed to the same subject matter as the patent in suit. Hawkes states in his specification that—

"My invention relates to improvements in ripraps, for the control or restraint, within fixed bounds, of water courses of every description, * * * the object of the invention being to provide a flexible, resistant covering, for the protection of such exposed places as may be subject to damage through water, also to provide an efficient apron of water-resisting materials, for the purpose of diverting currents of water into suitable channels, * * *."

In his disclosure of materials to be used, one of the materials suggested is asphaltum. In the first form in which this is disclosed the specification refers to it as blocks, stating that—

"This block may be of any desired shape, size, and thickness."

This statement is substantially identical with the instructions given in the patent in suit, which we have already quoted and which refers to the mats being made of individual sheets of the *required dimensions*.

The suggestion is also made that these blocks may be reinforced by metal rods, bands, plates, chains, cables or fiber strands, which are passed through the block both longitudinally and laterally, the Hawkes specification thus disclosing a block of metallically reinforced asphaltic composition of any desired shape or size or thickness.

After discussing various methods of using the blocks and fastening them together in a manner somewhat similar to the articulated concrete blocks, Hawkes states further—

"Where it is desired to supply flexible riprap of a character practically impervious to water, then as an alternate to the block system above described, a tensile mesh may be provided and incorporated into a continuous flexible sheet formed of any water-resisting material capable of yielding to pressure without being readily ruptured."

There is no doubt in our minds that the form here suggested, coupled with Hawkes' suggestion of the use of asphaltum with its well-known inherently flexible properties, is exactly what the defendant has utilized on the banks of the Mississippi River.

The Hawkes patent was published October 29, 1907, and following the old axiom, that which infringes if early enough anticipates, the two claims in suit are anticipated. The prior art which we have specifically referred to in this opinion, as well as that set forth in the findings of fact, clearly shows that the inherent characteristics of asphaltic compositions, such as permanent flexibility, water-resistant properties, and self-sustaining cohesiveness, were known to those skilled in the art, and the use of asphaltic compositions in both slabs and continuous sheets with metallic reinforcement, and for the purpose of the control of water courses, was also known.

The two claims of the Mechlin patent in suit do not specify anything previously unknown to those skilled in the art and these claims are not directed to novel subject matter, and are invalid.

The petition is dismissed. It is so ordered.

