**Thomas W. NICHOLSON, Plaintiff,**

v.

**CARL W. MULLIS ENGINEERING AND MANUFACTURING COMPANY, Inc., Defendant.**

**Civ. A. No. 2613.**

United States District Court
W. D. South Carolina,
Rock Hill Division.

Dec. 8, 1961.

As Amended Jan. 12, 1962.

Rainey, Fant & Horton, Greenville, S. C., Robert W. Beach, Seattle, Wash., for plaintiff.

Richards, Caskey & Richards, Lancaster, S. C., Jennings Bailey, Jr., Washington, D. C., for defendant.

WYCHE, District Judge.

This is an action filed by Thomas W. Nicholson as plaintiff against Mullis Engineering and Manufacturing Company, Inc. as defendant, in which the plaintiff alleges infringement of two patents Nos. 2,802,495 and 2,802,496, both owned by the plaintiff Nicholson, by the manufacture, use and sale of certain log debarking machines. The defendant as exclusive licensee counterclaimed for infringement of patent No. 2,908,302, owned by Carl W. Mullis, Sr., its president, who intervened herein, charging infringement of such patent by the manufacture, use and sale of certain other debarking machines, known as Accumat machines, by Nicholson and his wholly owned company, Nicholson Manufacturing Company.

Neither party has questioned the jurisdiction of this Court over the parties or over the subject matter.

The case was tried by me at Rock Hill, South Carolina, evidence was presented by both sides and oral arguments and excellent written briefs submitted for my consideration.

In compliance with Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. Plaintiff is a resident of Auburn, Washington.

2. Defendant is a corporation of South Carolina, located at Lancaster, South Carolina.

3. This is an action under the patent laws of the United States.

4. This Court has jurisdiction of the parties and of the cause of action set out in the complaint and counterclaim.

5. Plaintiff is the owner of patents Nos. 2,802,495 and 2,802,496.

6. Plaintiff has charged defendant with infringement of claim 4 of patent No. 2,802,495 and claim 1 of patent No. 2,802,496.

7. Both the patents in suit relate to log debarking machines.

8. Patent No. 2,802,495 shows, and in claim 4 claims, a ring-type debarker including a ring 2 on which are pivoted at 32 arms 31 which carry scraper plate debarking tools 4. The tools are pressed toward the log by pistons connected to piston rods 33 pivoted at 36 to arms 31. The pistons are slidable in cylinders 34 pivoted at 35 on ring 4. The pivots 32 of the arms are spaced circumferentially around the ring, and the pivots 36 at which the piston rods 33 are connected to the arms 31 are located between the pivots 32 of the arms and the ends of the arms which carry the tools 4. The pivots 35 of the cylinders are also circumferentially displaced with respect to the pivots 32 of the arms.

Rollers 1 feed a log lengthwise through the center of the ring while preventing it from turning. As the ring rotates, it drags the tools around the log and scrapes off the bark.

9. Patent No. 2,802,496 discloses, and in claim 1 claims, a debarking device in which a log is rotated past a nonrotative arm. An arm 2, pivoted at 20, carries a lever 45 with a debarking scraper blade or plate 34 and is pressed toward the log by a piston slidable in a cylinder 25. When the log is rotated, the tool drags over its surface and removes the bark. The edge 30 of the tool is formed by the leading face as one plane and by another flat surface meeting the leading face at an angle, and the angle between the leading face and the tangent to the log is not over 90°, or a right angle.

10. The Mullis machines, charged as an infringement of these two patents, are ring-type debarkers in which the ring forms a reservoir for pressure fluid. The tool-carrying arms are pivoted on the ring, but the cylinders are fixed to the ring at locations spaced around the ring from the arm pivots. A connecting rod is pivoted to and connects each piston in its cylinder and a tool carrying arm at a location between the pivot of such arm on the ring and the inner end of the arm. The Mullis tool has a blunt edge formed by the intersection of two planes at right angles to each other.

11. Mullis has charged Nicholson with infringement of claim 8 of his patent No. 2,908,302 by making and selling a debarking machine known as an Accumat.

The Nicholson Accumat machine is not like the one shown in Nicholson's 495 and 496 patents.

12. Defendant attacks the validity of the two Nicholson patents and denies infringement.

13. Plaintiff attacks the validity of the Mullis patent and denies infringement.

14. During the year 1952, more than one year before the filing of the application resulting in the 495 patent, Nicholson built, within the United States, a log debarking machine (hereinafter referred to as the Cascade machine) embodying every element of claim 4 of the patent. The machine was completed at least as early as August, 1952, and had been demonstrated to outsiders at that time. During 1952, about fifty people outside of plaintiff's company saw the machine, and half of these saw it in operation. These were people in the lumber business and there was no general policy of requiring of outsiders who saw the machine to maintain secrecy.

15. As early as September, 1952, Nicholson had run extensive tests on this machine with all types of logs and in his opinion it did a wonderful job.

16. On February 1, 1953, one year before the filing of the application resulting in the 495 patent, Nicholson stated in a letter that "we have sold some further machines".

17. On April 27, 1956, Nicholson filed in the Patent Office, in the application for his 495 patent, an affidavit under Rule 131, in which he stated that "The machine shown in the attached photograph is built and used for successfully remov-

ing bark from logs in the United States of America prior to October 31, 1952". This referred to the Cascade machine.

18. The Cascade machine was built under a contract between Nicholson and Cascade Lumber Company, Yakima, Washington. This contract was originally made on November 30, 1951. It was somewhat modified on December 11, 1951, and on March 19, 1952. Payment of $9,250 under the contract was made by Cascade on March 19, 1952; of $3,000 on March 31, 1952; of $7,500 on June 13, 1952.

19. The Cascade machine was delivered to Cascade before February 1, 1953; was accepted by Cascade about the middle of April, 1953; and was completely paid for on April 17, 1953.

20. In September, 1952, Nicholson allowed a reporter for "The Lumberman" to see the machine, take at least two pictures of it, and write an article about it which was published in September, 1952. In the same issue, the Nicholson Company inserted an advertisement with a picture of the machine entitled "New Nicholson Rotobarker".

21. The advertisement displayed prominently the words "what the Industry has been waiting for".

22. In the November, 1952, issue of "The Lumberman", Nicholson had an advertisement with a picture of the Cascade machine.

23. The application resulting in patent No. 2,802,495 was filed in the Patent Office on February 1, 1954.

24. The specification of Patent No. 2,802,495 does not state, nor did the application which resulted in the patent, state that the piston rods were pivoted to the arms at points between the pivots of the arms and the tools, nor that the pivots of the cylinders were spaced circumferentially of the ring from the pivot mountings of the arms, although the drawings showed these relationships.

25. The specification of Patent No. 2,802,495 does not state, nor did the application which resulted in the patent state any advantages or benefits resulting from the fact that the piston rods were pivoted to the arms at points between the pivots of the arms and the tools, or from the fact that the pivots of the cylinders were spaced circumferentially of the ring from the pivot mountings of the arms.

26. None of the claims of the original application which resulted in Patent No. 2,802,495 specified that the piston rods were pivoted to the arms at points between the pivots of the arms and the tools, or that the pivots of the cylinders were spaced circumferentially of the ring from the pivot mountings of the arms. Specifically, original claim 9, for which claim 22 (which became claim 4 of patent No. 2,802,495) was substituted, did not recite either of these limitations.

27. The statements that the piston rods were pivoted to the arms at points between the pivots of the arms and the tools, or that the pivots of the cylinders were spaced circumferentially of the ring from the pivot mountings of the arms were first introduced into the application which resulted in Patent No. 2,802,495 on October 24, 1956, appearing in added claim 22 of the application.

28. No supplemental oath was filed by plaintiff in the application which resulted in Patent No. 2,802,495.

29. In Whitlock, the piston rods 146, when fluid under pressure is admitted to the cylinders 144, advance the debarking tools toward the log. The pivots 56 of the pressure cylinders to the arm are located between the pivot 47 of the arm and the rotating tool, that is, on the same side of the pivot 47 as the rotating tool, and the pivots 136 of the pistons on the ring are circumferentially displaced with reference to the pivots 47 of the arms.

30. Pauley 2,576,987 shows in Fig. 4 a machine in which the tool is non-rotative while the log rotates. The log is indicated at 15. A blunt tool 67 is carried by an arm 28 pivoted at 29 on a frame 27 slidable toward and away from the log, and is pushed toward the log by a piston operating in a cylinder 32, the piston being connected by piston rod 31

and pivot 35 to arm 28. With respect to the axis of rotation of the log, the piston rod 31 which exerts pressure on the arm 29 is connected to that arm at a point between the pivot 29 of the arm and the tool 67, that is, on the same side of the pivot 29 as the tool 67, and the pivot point of the cylinder 32 is circumferentially displaced with respect to the axis of the log from the pivot 29 of the arm.

31. The Nicholson 495 patent does not say that, in order to maintain the characteristics of an angle for different sizes of logs it is necessary to change the proportioning of the lengths and the relative positions of the pivot points.

32. In the Nicholson 495 patent, the diameters at which the pivot points are placed and the mounting of the cylinders and arms are critical and differ for each machine.

33. In the Nicholson 495 patent the proportions and geometry vary for each variation of the angle of the tool.

34. The Nicholson 495 patent does not teach what size log is shown in Fig. 7.

35. Ring-type debarkers were not Nicholson's invention. They were shown by the patents to Dolsen, No. 397,114 issued in 1889, Whitlock 2,591,751 and Schnyder 2,448,687.

36. The mounting of a debarking tool on an arm pivoted on a ring was not Nicholson's invention, but was shown by Whitlock 2,591,751, and Schnyder 2,-448,689.

37. The attachment of a piston rod to a debarking tool-carrying arm at a point between the arm pivot and the tool-carrying end was not Nicholson's invention, but was taught by Whitlock 2,591,751.

38. The pivoting of arm-actuating cylinders on the ring of a debarking machine at points circumferentially spaced from the arm pivots was not Nicholson's invention. It was disclosed by Whitlock 2,591,751.

39. The mounting of a scraper blade on a pivoted arm, between which the log rotary movement taks place, and a piston with a piston rod pivoted to the arm between the arm pivot and the scaper blade, the cylinder in which the piston moves being pivoted at a point spaced circumferentially with respect to the log axis from the arm pivot, was not Nicholson's invention, being shown by Pauley 2,-576,967.

40. Nicholson was not the first inventor of any of the parts or the relationships thereof specified in claim 4 of patent No. 2,802,495.

Infringement of Nicholson 495 Patent

41. Plaintiff has not offered evidence that the "means effecting engagement between each of said fluid-pressure members and its corresponding arm" or the "means supporting each of said fluid-pressure members from said ring" in the Mullis machine are the same as or equivalents of the two means shown in the Nicholson patent.

Validity of Nicholson 496 Patent

42. The German patent to Stoltz shows a device for removing bark from logs. The log is indicated in the drawings at $i$, and is intended to be turned clockwise with respect to the tool. Stoltz has a framework $b$ which is movable toward and from the log and is pushed toward it by a spring $d$. Pivoted at $e$ on this frame is an arm $c$, which carries at its end a tool $g$. This tool, which is called a scraping cutter in the Stoltz patent, has an edge formed by two intersecting planes at an angle to each other, and the leading face, which is the upper face in the drawing, is at right angles to a tangent to the log at the point of engagement of the tool with the log. Stoltz also has a feeler $k$ for preventing the tool from engaging too deep into the log.

43. Schnyder 2,448,689 has a scraper (column 2, line 26) composed of sets of two points spaced longitudinally of the log, and each of these points has exactly the characteristic features of claim 1 of the 496 patent, and engages and is pressed against the log during rotation thereof. The only difference is that there

are two such points spaced along the log instead of a continuous blade.

44. Continuous scrapers are well known, as shown by Stoltz (German) and Pauley.

45. The Nicholson 496 patent does not say that, in order to maintain the characteristics of an angle for different sizes of logs it is necessary to change the proportioning of the lengths and the relative positions of the pivot points.

46. In the Nicholson 496 patent, the distance at which the pivot point is spaced from the log and the mounting of the cylinder and arm are critical.

47. During the prosecution of the application for the 496 patent, applicant presented a claim (claim 22, page 44) reading as follows: "22. A log-barking machine comprising log-supporting means, a scraper plate having a planer leading face disposed in a plane intersecting the surface of a log supported by said log-supporting means and disposed generally parallel to the longitudinal axis of a log carried by said log supporting means and having a log-engaging corner of substantially 90 degrees, elongated substantially parallel to the longitudinal axis of the log and formed by the intersection of the planar leading face of said scraper plate and an edge surface substantially perpendicular to said leading face, means supporting said scraper plate with its leading planar face at an acute leading angle to the tangential plane which is perpendicular to the diametric plane of a log carried by said log-supporting means and containing the longitudinal axis of such log and said plate's log-engaging corner, and means operable to effect relative movement between said scraper plate and a log carried by said log supporting means in a direction circumferentially of such log with said log-engaging corner engaged therewith to scrape bark therefrom."

48. This claim after certain amendments was rejected in the Office action of March 9, 1956, as unpatentable over the prior art and was replaced by claim 36 in the amendment of September 10, 1956.

49. In presenting claim 1 of the 496 patent to the Patent Office (amendment of October 24, 1956, with reference to claim 37, which was renumbered as claim 1), Nicholson said "this claim defines the particular angular nature of applicant's log-engaging edge".

50. The Mullis tool when manufactured conforms as nearly as possible to plaintiff's Exhibit 12E. The tool has two surfaces converging at an angle of about 15° toward a point, but the surfaces do not meet at this point. Instead, there is a transverse surface which at the intersection with the leading surface at an angle of 90° forms the scraping edge. In use, this tool wears somewhat at the corners.

51. The edge of the Mullis tool is not "formed by the convergence of two substantially planar surfaces".

### The Mullis Patent Validity

52. The machine of the Mullis patent is designed to remove the bark from logs. In general, it comprises a rotating ring or drum (Fig. 5) turning about a horizontal axis and having inward extending pivoted arms 216 having tools 224 on their tips for removing the bark. The logs are fed through the ring by feed rollers, (see Fig. 2).

In this machine, the arms are of triangular shape (see 216, Fig. 6) with a reinforcing flange D along one edge consisting of an arch-shaped plate of substantial thickness and rigidity welded along one side of the triangle. The arms are curved inwardly toward the axis of the drum. These arms are hinged at 212 on the inside of the hollow rotating ring. Pistons are movable in cylinders 232 opening into the ring, and are connected by piston rods 252 to the arms. The outer ends 246 of these cylinders are completely open in communication with the ring tank 104 and such cylinders are mounted on the inner peripheral wall 106 of such ring tank.

A valve allows the operator, while the machine is stationary, to supply compressed air to the inside of the hollow ring. This causes a pressure on the pis-

tons which pushes them against the log as it passes through the ring.

The debarking tools are mounted in slots in the ends of the arms.

The arms are made somewhat askew, that is, they are not simply plain flat sheets radial to the axis of rotation of the ring but are somewhat twisted into a slightly spiral or helical shape. The curvature of the arm and the reinforcing flange gives the inside edge of the flange a curved shape. This curve approaches the center of the drum. As a result, when the front corner of a log is fed against these arms, as the drum is rotating, the inner edge portions of the flanges engage over the corners of the end of the log and, as the log is pushed farther into the ring, are cammed away from the axis so that the tools are moved out of the path of the log. As soon as the front end of the log reaches the center of the drum, its edges have passed the edge portions of the arms and the tools drop down on the log and are pressed against it by the air pressure in drum R. Continued movement of the log combined with rotation of the head or drum then causes the tools to follow a spiral path around the log to remove the bark.

53. In past log debarking machines, there had been none which accomplished simultaneously all the advantages of this Mullis machine. In the Mullis machine, because all the outer ends of cylinders 232 open into the ring tank 104 common to them, the pistons are not pushed against the log with different pressures (as they are if individual springs or rubber bands are used for each tool arm). Likewise, there is no need in Mullis for a seal between the rotating ring and a stationary frame, since the source of pressure in Mullis is self-contained in the ring and only requires replenishment once or twice a day. Also, the arms of Mullis are askew, that is, they have an edge of gradually tapering nature facing the oncoming log, which engages the butt end of the log and, by the rotation of the ring around the log, cause the arms to open up and admit the

log, after which the tools engage the periphery of the log to debark it. This askew arm feature means that there is no need for any control connection between the rotating ring and a stationary control lever available to the operator.

54. As is shown by the Nicholson 495 patent, the supply of fluid under pressure to the log from an outside source, along with the control of this fluid so as to produce opening and closing of the arms to admit the log and then to clamp the tools against it, requires a fairly complex sealing mechanism shown at the bottom of Fig. 3 (sheet 3) of the drawings of the 495 patent.

The expense of this construction is eliminated by the Mullis construction.

55. Emery 2,477,922 has a ring adapted to be fed along and to rotate around a tree or log. This ring carries two unconnected tanks 75 for pressure fluid. The debarking elements of Emery are mounted on arms pivoted about axes perpendicular to the log axis, and are located completely outside the ring. The arms which carry the tools are not self-opening.

56. The tool carrying arms of Whitlock are opened by admission of air under pressure to cylinders 134 and are not self-opening.

57. Anderson 2,623,558 furnishes air to cylinders 3 from a source outside the ring. He has no pivoted arms. The debarking tools are moved outwardly by air pressure and are not self-opening.

58. Leffler 2,692,623 has a separate spring and weight for each arm, and there is no interconnection for purposes of equalization. The arms are not opened by engagement with the butt end of the log.

59. League 2,749,552 moves the debarking tools in and out by turning one ring relative to another to shift the pivots of cylinders 42. These cylinders are merely cushioning members (col. 4, lines 63–69).

60. Brundell 2,786,499 has self-opening arms. Brundell applies the force to the arms by a separate rubber band or

the like for each arm. There is no interconnection between the arms.

61. Hansel 2,798,518 has no self-opening arms. Movement of the arms is controlled by fluid under pressure supplied to cylinder 19 in which slides a piston 20 rotating with the ring.

62. Piispanen (Canadian) 489,540 shows in Fig. 1 a chain 38 carried by arms 39 mounted to turn about an axis perpendicular to the log axis and completely outside the ring.

63. Piispanen supplies fluid under pressure to the pistons from a stationary source and requires a seal between the rotating ring 27 and the stationary frame 21. All the cylinders of Piispanen are interconnected.

64. Piispanen shows in Fig. 3 similarly mounted arms with flexible metallic straps as debarking tools each pushed by a separate spring for each arm, but which springs are connected to the pressure equalizing ring 72 in common.

### Infringement

65. Nicholson has, since the issuance of the Mullis patent, built and sold within the United States such a log debarking machine called an Accumat.

66. The Accumat machine is a rotating ring type debarker with inwardly directed arms pivoted on the ring. Cylinders mounted on the ring have pistons slidable in them and pivoted to the arms. There as four such cylinders. There is a so-called accumulator for each cylinder. This is a tank with a bag inside it containing a gas under pressure. Hydraulic fluid in the tank on the outside of the bag is connected by a pipe to the cylinder, to push the arms inward and hold the tools against the log.

The supply of pressure fluid in the Accumat machine is self-contained by the ring.

All four of the tanks are connected by a pipe which runs around the ring. If there is leakage from any bag, this pipe will produce equalization of the pressure in all of the bags after a short time.

On the arm of the Accumat barker is an upstanding ridge which increases in height from a point near the tip of the arm toward the base of the arm. Engagement of the flange or ridge by the butt of the log causes the arms to open up automatically to admit the log between them.

67. The expense of a connection to a stationary source of fluid pressure is also eliminated in the Nicholson Accumat machine, built after Nicholson had knowledge of the Mullis machine. Nicholson's Accumat uses askew arms closely similar to the arms of Mullis and also a self-contained source of pressure fluid carried by the ring which is so connected to all the cylinders which control the arms as to produce equalization of the pressures on the different arms.

68. The Nicholson Accumat operates in the same manner as the machine shown in the Mullis patent, both as a whole and as to its individual parts, and it produces the same overall results and has substantially the same advantages.

69. Neither Nicholson nor his expert had ever before seen a machine having the features of the Mullis machine.

70. Carl W. Mullis, Sr., the inventor of defendant's machine, had seen the machine of the Nicholson 495 patent before he designed defendant's machine.

### Opinion and Conclusions of Law

Nicholson charges Mullis with infringement of claim 4 of the 495 patent and claim 1 of the 496 patent. Mullis charges Nicholson with infringement of claim 8 of the Mullis patent.

The machines in issue are what are known as ring-type debarkers. Such machines have a ring driven to rotate about a horizontal axis, and logs are fed endwise through the ring and are held against turning by feed rollers. Inside the ring are mounted tools which are pressed against the log and, as the ring turns, remove the bark from the log. Such machines are not new, having been shown in the patent to Dolsen, No. 397,-114 issued in 1889.

### The Nicholson 495 Patent

Claim 4 of this patent describes a machine in which arms pivoted on the ring carry scraping tools at their ends which are pressed against the logs by pistons mounted in cylinders pivoted on the ring. The ring is turned by a motor. The points emphasized in claim 4 are that the piston rods are connected to the arms at points on the same sides of the arm pivots as the scraper-plates and that the pivots of the piston rods are spaced circumferentially of the ring from the pivots of the arms. The cylinders and pistons are described generally as fluid-pressure members and "means effecting engagement between * * * said fluid-pressure members" and arms.

Defendant denies that it infringes claim 4 of this patent, and says that the claim is invalid for several reasons, namely: (1) That the machine shown in the patent was in public use and on sale more than one year before the filing in the Patent Office of the application which became the patent; (2) That the machine as described in claim 4 does not represent invention over the machines of certain earlier patents, particularly Whitlock, No. 2,591,751 and Pauley No. 2,576,967; (3) That the machine was shown in an advertisement in The Lumberman more than one year before the filing in the Patent Office of the application which became the patent; (4) That the subject matter of claim 4 was "new matter", not supported by a supplemental oath; (5) That the disclosure made by Nicholson was inadequate and insufficient to teach how to build such a machine.

### (a) *Public Use and Sale*

As to these defenses, it is undisputed that Nicholson filed his application on February 1, 1954; that he built and operated a machine like the one shown in his patent in 1952; that this machine was tested at that time on all sorts of logs and did a fine job in Nicholson's opinion; that he took two orders for such machines during 1952, and received partial payments on such orders; that he demonstrated the machine during 1952, to around twenty-five outsiders, many of whom were not under any injunction of secrecy; and that he advertised the machine in a trade publication "The Lumberman" in September, 1952, as "What the Industry has been Waiting for".

These facts constitute a prima facie case, and in fact almost an open and shut case, of public use and of offering for sale. Once that case was made out, the burden shifted to Nicholson to show that such use was experimental. Aerovox Corp. v. Polymet Mfg. Corp., 2 Cir., 67 F.2d 860, 861. There was no substantial evidence presented by plaintiff on this point and the burden was not met. This evidence establishes that there was public use and public sale by Nicholson more than one year before he applied for his patent, which is invalid for this reason. 35 U.S.C.A. § 102(b). Nicholson made oath in his patent application under Patent Rule 131, 35 U.S.C.A.Appendix to antedate a patent cited against him by the Examiner. Rule 131, with exceptions not applicable here, requires proof of facts showing *completion* of the invention. Nicholson's affidavit showing such completion in 1952, is inconsistent with any argument that his use in that year was merely experimental. Nicholson's advertising of his machine in September, and November, 1952, is inconsistent with his argument that the machine was incomplete and still in the experimental stage at that time.

### (b) *Earlier Patents*

The relationships of the pivot points of the arms on the ring, the cylinders on the ring, and the piston rods to the arms were not new with Nicholson. They were shown in the Whitlock patent, No. 2,591,751. While this patent has rotating bark removing tools instead of the scrapers of Nicholson 495, there was no evidence to show that this made any difference. Nicholson offered no evidence as to the advantages of this particular construction. Likewise, Pauley No. 2,-

576,967 shows the same relationship in a bark remover where the tool is stationary and the log turns past the tool. Pauley's tool is a blunt, bark removing tool. Since both types of machine were well-known, as shown by Nicholson's own two patents, invention was not needed to mount the Pauley tool holding arrangement on a ring and rotate it around a fixed log. This is all that claim 4 of Nicholson 495 calls for.

### (c) "The Lumberman"

As to the article and advertisements in "The Lumberman", I make no finding, such appearing unnecessary in view of the finding of invalidity on the other grounds set forth.

### (d) New Matter

■ The law requires that what is claimed by a patent must be sworn to by the inventor. If something shown in the drawings is not described in the original application, and the inventor wants to insert it later, the Patent Office Rules provide a remedy by way of allowing him to file a supplemental oath. If new matter is brought in without such an oath, the patent is invalid. Steward v. American Lava Co., 215 U.S. 161, 30 S.Ct. 46, 54 L.Ed. 139.

The relationships of the pivots set out in claim 4 of the 495 patent were not stated in the original papers, but were inserted by way of amendment without a supplemental oath. This invalidates the patent.

### (e) Failure of Disclosure

■ Nicholson testified that the proportions of the various parts of each other were critical, that they differed in machines of varying size, and that his patent did not even tell the size of the machine shown in it. He testified that the only statement in the patent was that the tool must maintain a certain angle with respect to the log, but that the mathematics of obtaining such an angle was not set forth. This presented a problem and was not a sufficient disclosure to let anyone build one of these machines and be sure it would work. The patent is, therefore, invalid. Water Hammer Arrester Corporation v. Tower, 7 Cir., 156 F.2d 775, 781.

### (f) Noninfringement

The last paragraph of Section 112 of the Patent Act provides that claims to a means cover only the means shown in the patent and equivalents thereof. Claim 4 calls for "means" in several places. The Mullis machine is not the same as the machine shown in the Nicholson patent. Mullis' cylinders are stationary while those of Nicholson are pivoted and Mullis' arms are self-opening while Nicholson has pressure-operated arrangements for opening the arms.

■■ There was no evidence offered to show that any "means" in the Mullis machine was equivalent to the structures found in Nicholson. The burden of proving infringement is on the plaintiff and this burden has not been met and the Mullis machine has not been proved to infringe

### The Nicholson 496 Patent

This patent shows a stationary type tool carrying arm. Claim 1, which is charged to be infringed by the Mullis machine, relates to the shape and position of the tool which scrapes the bark from the log. This tool has an edge formed by two converging planes and its leading face is held so that it forms a right angle or something a little less than a right angle to the tangent to the log at its point of contact.

Defendant says that it does not infringe this patent and that it is invalid for the following reasons: (1) That it is anticipated by, or does not represent invention over certain earlier patents; (2) That the disclosure made by the Nicholson was inadequate, and insufficient to teach how to build such a machine. Defendant also denies that it infringes claim 1 of the patent.

### (a) Earlier Patents

■ The Stoltz German patent, No. 522,701, as illustrated by the chart, shows every element of claim 1 in the same relation and operating in the same way. No evidence was offered contradicting this chart and Stoltz completely anticipates claim 1.

Likewise, the patent to Schnyder No. 2,448,669 shows scraping teeth which have the same relationship to the log, as far as their shape is concerned, as the edges of the Nicholson tool. These are spaced along the log, but, since tools extending in the direction of the length of the log are old, as shown in Stoltz and Pauley, it would not be invention to make these teeth continuous.

### (b) Failure of Disclosure

■ Nicholson's testimony about this patent was the same as that about the 495 patent, and I find the disclosure faulty and the patent invalid for the same reasons.

### (c) Noninfringement

The Mullis tool has a scraping edge formed by two planes meeting at a right angle, somewhat rounded in use, and not formed by converging planes as claim 1 requires. No evidence was offered to show that the Mullis tool was equivalent to the Nicholson tool as described in claim 1.

■ Also, Nicholson, while trying to get his patent, presented to the Patent Office a claim which would have accurately described the Mullis tool. This claim was refused by the Patent Office and cancelled. Under the doctrine of file wrapper estoppel, Nicholson cannot charge that the Mullis tool is an infringement.

■ The burden on plaintiff to prove infringement has not been met.

### The Mullis Patent No. 2,908,302

Mullis charges that Nicholson has infringed claim 8 of this patent by making, using and selling a machine called "Accumat". This machine is quite different from the machines shown in the Nicholson patents in suit and was built by Nicholson after he had heard a description of the Mullis machine.

Mullis devised a machine which incorporated a number of features which Nicholson's own expert admitted he had never seen before in combination. It has a source of pressure fluid carried by the ring, so that no outside supply is needed, and there are no sealing joints required between the ring and the stationary part of the machine. The source is connected to all the cylinders so that the pressure is equalized on all the tool-carrying arms. The arms are "askew", that is, they have curved front edges so that, when the butt end of a log strikes them, they open automatically and apply the tool to the log.

■ No patent in the prior art and no machine known to plaintiff or his expert, has a self-contained reservoir of pressure fluid in the ring connected to all the cylinders with self-opening askew arms. This combination was new and I find the Mullis patent valid.

Nicholson adopted, with some variation, all these features of Mullis in his Accumat machine, which infringes claim 8 of the Mullis patent.

For the foregoing reasons, it is my opinion that defendant is entitled to a decree dismissing the original complaint with costs; to an injunction restraining Nicholson, Nicholson Manufacturing Company and all persons working in concert with them from manufacturing the Accumat machine or any other machine embodying the principles of the Mullis patent, and to an accounting for all Accumat machines made, used or sold after October 11, 1959, by Nicholson or Nicholson Manufacturing Company within the United States, or its territories or possessions.

Counsel may present appropriate order accordingly.